**Dotte TROXELL, Appellant,**

v.

**Kenneth WELCH, Respondent.**

**No. WD 35590.**

Missouri Court of Appeals,
Western District.

Jan. 2, 1985.
Rehearing Denied March 5, 1985.

Bernard E. Brown, Kansas City, for appellant.

W.R. Schelp, Lexington, for respondent.

Before LOWENSTEIN, P.J., and SOMERVILLE and NUGENT, JJ.

LOWENSTEIN, Presiding Judge.

Appellant, Dotte Troxell, and respondent, Kenneth Welch, own adjoining farms near Lexington, Missouri where both raise cattle. The facts and history of this litigation are very confusing. This preliminary overview is presented before the individual points of error are attempted to be dealt with. In October 1974 the parties entered into an oral contract to combine their herds for breeding purposes. Troxell would be responsible for the care and management of the entire herd, with Welch paying for expenses relating to his cattle plus being responsible for cutting and baling Troxell's alfalfa. Troxell's payment was her getting the pick of one-half the calf crop. In the spring of 1976, Troxell informed Welch she wished to terminate the agreement. On May 8, 1976 the herds were split and sent into separate pastures. However, some of Welch's cattle were still carrying calves that could not be divided until November 1976. Troxell also allowed her bulls to run with Welch's herd until July 1976.

At this juncture some procedural facts must be interjected. Troxell's first petition was filed in April, 1977. In it were basically three causes of action: breach of con-

tract, trespass, and conversion. Despite some ten settings between December of 1979 and June, 1982, the case made little progress until five years later, when, on July 12, 1982, new counsel entered his appearance for Troxell. Leave was subsequently granted and on November 14, 1982 Troxell filed a First Amended Petition. The original petition was 2½ pages and contained three points. The amended petition had six counts and covered some six pages. Ultimately the trial ruled in favor of Welch's motion to strike numerous counts and paragraphs of the amended petition, so the case went to trial on breach of contract and conversion, with trespass being limited to events occurring after December 2, 1976.

As to the breach of contract claim, Troxell testified that Welch owed her $2,808.27 for medicine, food, and other expenses relating to his cattle that he had never paid. Welch claimed that Troxell charged her costs to the various businesses, which in turn billed him directly; the understanding did not include these extra expenses.

The evidence on the conversion claim consisted of Troxell testifying that on August 9, 1976 some 16 cows were stolen from her property, and wound up in Welch's barn. She did not see the perpetrator, but assumed it was Welch. One cow, 1C15, returned but on August 15 it was stolen again, and this time Troxell claimed she saw Welch do it. Welch on the other hand produced evidence which put him in Washington, D.C. for navy reserve training on those dates.

The trespass cause of action was basically eliminated when Troxell stipulated that she had no claims for damages after December 2, 1976. She was not allowed to testify as to damages incurred during the summer of 1976 because the trial court decided a release form that Troxell signed on December 2 covered all earlier damages.

The jury found for Welch on the two submitted causes of breach of contract and for conversion. It is from this verdict and the court's striking most of her count on trespass damages that Troxell appeals.

### I.

As presented Troxell's first point is practically incomprehensible. She basically contends error was committed when her amended petition suffered major deletions because of statute of limitations questions and because of accord and satisfaction. The limitation issue pivots upon the interpretation and application of Rule 55.33(c) which states in pertinent part: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

Paraphrased as well as can be done, Troxell's first attorney filed a petition, now admitted to be "hazy," on April 18, 1977 which appears below on the left. On the right, paraphrased is the amended version, filed with leave on November 16, 1982. The portions stricken on February 8, 1983, are bracketed:

[Patrick E. Welch, Inc., was also named as a defendant, and that Welch was acting on its behalf.]

| Count I | Count I |
|---|---|
| (Trespass) | (Contract) |
| From and after May 10, 1976, Welch permitted his cattle to come on her land and damage crops. | 1. The contract for cows and breeding provided: a) Troxell was to care for both herds; b) [Troxell's bulls were to be bred with Welch's cattle and she was to receive ½ the crop]; c) Welch was to |

(Conversion)

On August 9, 1976 Welch came over and took her cow marked 1C15, valued at $1500. She asked for $1500 under this count.

bear the expenses for his cattle; d) [Welch represented his herd to be excellent for breeding].

2. [Because he stripped his herd of breeding cattle she did not recover $28,904 in calf crops].

3. [Instead of ½ she only got ¼ of the resulting calf crops].

4. Her expenses for his herd (Count II other side) were $3,146.

5. [His cattle were in poor condition, reducing the calf crop and harming her cattle—$16,204].

## Count II

(Contract)

In 1974 they entered an oral contract where she would care for his cattle at his expense and she was to get ½ the calf crop. The agreement was terminated on May 10, 1976, at which time she had $2000 in expenses for his cattle. The prayer was for $2000.

## Count II

(Trespass)

1. [From and after May 10, 1976, Welch permitted cattle to come on her property, in violation of Chapters 270 and 272 RSMo].

2. $10,192 in damages caused by cattle. (Court allowed only for damages after December 2, 1976).

3. [She had expenses and her labor of repairing fences and "conferring with law enforcement authorities" of $1,158].

4. [Harm to her cattle from his of $32,500.

5. & 6. Troxell dismissed these portions for personal injuries to her amounting to $15,000.

## Count III

(Trespass)

The "entering" and

(Conversion)

"removing" of cattle (punitive damages) by Welch called for punitive damages of $100,000.

## Count III

1-4 [Asked for $100 for care of his cattle she had impounded as a lien, between August 7 and August 10 (270 and 272 RSMo.) prior to his retaking them.

## Count IV

1-5 [Similar to Count III, above, except for damages between August 11 and August 23, 1976].

## Count V

(Conversion)

1-3 ["on at least one occasion in August, 1976," Welch "removed cattle of Troxell. Damages of $4,350."] Be-

cause of conversion portion in Count I of the original petition, everything was struck except for the one cow on August 9.

### Count VI—Punitive Damages

(Conversion)

1–4 is allowing cattle to trespass, and in his trespass [and conversion of impounded cattle] caused her mental anguish to the extent of $500,000.

The judge who presided at trial did not rule on the pre-trial motions. The events for which she sought damages occurred in 1976. The first petition came in 1977, the amended petition in 1982, and trial took place in October 1983. The parties agree § 516.120 RSMo 1978 applies to impose a 5 year statute of limitations on the claims. Again, the claims of Troxell, as noted marginally in the deciphered accounts of the petitions, fall into the categories of breach of contract, trespass and conversion.

### I.

The effect of the release will first be addressed. It covers the trespass aspect of the case. On December 2, 1976 Troxell executed, in consideration of $2850, a release of Welch of all claims "which (she now has ... growing out of the trespass ... of ... cattle ... including ... personal and property damage ... from the events which occurred on or about the 20th day of July, 1976." The document went on to provide it was not to release Welch of any claims by Troxell for breach of contract or conversion of property. By allowing Troxell to present evidence on damages only *after* the date of the release, the result was, in effect, the striking of this whole count since any damage was confined in the period of May 10 through October at the latest. In her offer of proof on trespass she noted specific dates starting on June 2 and extending to August 29th, or even into "September or October."

The court's reliance on the date of execution of the contract as releasing all damages to that date was misplaced. Why Troxell waited until December 2 to sign the release, like so much here, is a mystery. The specific language of the release shows an intent to only provide accord and satisfaction of a trespass of cattle on or about July 20, despite the caption "Release of all Claims." Welch cannot prove by the instrument's language a release general in nature as to all claims. *State ex rel. Normandy Orthopedics v. Crandall,* 581 S.W.2d 829, 834 (Mo. banc 1979). The intent of the parties is governed by the language of the release. *State ex rel. Stutz v. Campbell,* 602 S.W.2d 874, 876 (Mo.App. 1980). Here the specific language limits the release to on or about July 20, 1976, so any general language of the release is to be in subordination to the specific language. *Holly Inv. Co. v. Land Clear. For Redev. Auth.,* 646 S.W.2d 126, 129 (Mo. App.1983). Troxell should have been allowed to present evidence as to the cattle trespass damages from and after May 10, 1976 but no later than October 1, 1976 under paragraph 2 of Count II. Since she was allowed to present no evidence on this matter, the jury was never instructed to decide on this issue. This portion of the judgment is reversed with remand for trial on those trespass claims in the amended petition up to the pleaded amount of $10,-192.22. Welch must derive some benefit from the release. That had no further confusion—the release says on about July 20, but the offer names only the 17th and 23rd of July. Unless on re-trial Troxell can show an incident on July 20, the court may treat the release as covering the 17th and 23rd of July, 1976.

This leads to a determination on the rest of Count II as well as the other portions

stricken on the theory of not relating back so as to avoid the running of the 5 year statute of limitations. Rule 55.33(c) was effective September 1, 1973. This rule is the same word for word as Rule 15(c) of the Federal Rules of Civil Procedure, the essence of which is to avoid limitations problems. The claim must arise out of the conduct, transaction, or occurrence set forth or attempted to have been set forth in the original pleading. As can be here noted, the amended petition in Count II, all after 5 years, adds new factual situations and alleges different damages, such as paragraph 3, for her "labors," and paragraph 4 for health damage to her cattle from his cattle. Likewise, the counts on conversion and breach of contract added new factual situations, on new dates for which Troxell claimed damages. These damages added up to more than originally pleaded, and apparently gave rise to her asking for more in punitive damages. The question is, should any or all the newly pleaded matters relate back?

The ground rules for such a determination are in doubt. Prior to Rule 55.33(c), case law governed relation back and limitations problems. Two Supreme Court cases, *Miller v. Werner*, 431 S.W.2d 116 (Mo. 1968), and *Laux v. Motor Carriers Council of St. Louis, Inc.*, 499 S.W.2d 805, 807 (Mo.1973), typified the doctrine. They stand for the propositions: 1) that a plaintiff who pleads one theory and then attempts to change the theory, may not do so but is barred by the statute of limitations; 2) an amendment is to cure a lapse in the statement without a change in the original case, and; 3) whether the same evidence would support both petitions and the same measure of damages apply to both. Cases from this court, as recently as 1982 draw from *Miller* and *Laux, supra*, and reiterate that if the amended pleading requires proof of ultimate facts other or different from which could support the first, the statute acts as a bar. *Welch v. Continental Placement, Inc.*, 627 S.W.2d 319, 321 (Mo. App.1982); *Cress v. Mayer*, 626 S.W.2d 430, 436 (Mo.App.1981); *Briggs v. Cohen*, 603 S.W.2d 20, 22 (Mo.App.1980). Under these cases, all of Troxell's claims stricken were done so properly. For example, under the trespass count she sought to expand from damage to crops and fences the value of her labor in conferring with law enforcement officers, in the contract area she went from asking $2000 for unreimbursed expenses to $51,479 in the amended petition which included losses for his cows being unhealthy and that he had stripped his herd of cows that could produce a calf crop. The evidence to support her original petition would not support what she sought to add by amendment.

The rub comes because of cases from the eastern district which say pleadings are not an end in themselves but are to assist in the disposition of suits on their merits and the federal rule has been interpreted to allow relation back if the petition gives sufficient notice of the transaction to the defendant. *Hawkins v. Hawkins*, 533 S.W.2d 634, 638 (Mo.App.1976). In *Scott v. Gibbons*, 611 S.W.2d 387, 397 (Mo.App. 1981) a fourth amended petition by land purchasers was allowed to relate back because it asserted claims which grew out of the same transaction. In *Hawkins* the court says the adoption of Rule 55.33(c) was meant to change the same evidence test of *Miller, supra. Id.* at 538. The following cases are explanative of the federal rule: *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir.1973), (where the parties are the same, the better rule is that additional claims arising out of the same transaction or occurrence relate back, the main tests are notice and substantial prejudice to the defendant); *Brown v. Providence Gas Co.*, 445 F.Supp. 459, 463 (D.R.I.1976), (Purpose of 15(c) is to ameliorate harsher aspects of limitations periods when no surprise or prejudice and once litigation has commenced on a "particular occurrence," the parties are no longer entitled to protection of limitations statutes.); *Goodman v. Poland*, 395 F.Supp. 660, 684 (D.M.D.1975), (liberal spirit of fed-

eral rules allows additional claim out of same transaction); *Zagurski v. American Tobacco Co.*, 44 F.R.D. 440, 442 (D.Comm. 1967), (claims and theories can be added from original facts); *Marinari v. Dunleavy*, 86 F.R.D. 127, 130 (E.D.Pa.1980), (plaintiff can urge a new and different claim, or even a different interpretation of the facts while still alleging the same facts without a bar).

The amended petition when examined in light of the federal cases interpreting 15(c) takes on a different complexion. However, even under the liberal interpretation of the federal rule, there must be a limit. The general fact situation in Troxell's amended petition on the conversions of large numbers of cattle (Count IV paragraph 3) is new and expands those facts pleaded in Count I paragraph 4 of the petition which allege one conversion of one cow on August 9, 1976. *See De Malherbe v. International Union of Elevator Constructors*, 449 F.Supp. 1335 (N.D.Cal.1978).

Also, under the theme of adequate notice to the defendant of the general fact situation in the original complaint, or that "substantially overlapping occurrences" are present in both petitions, *De Malherbe, supra*, 1353–4, Count I paragraph 4 cannot be permitted. This is an entirely new *fact* situation that appeared in the amended petition. Welch could not have been on notice that he should prepare for an allegation that he only permitted her to get ¼ of the calf crop instead of ½.

This seems to be the unique problem in this case—the causes of action have not been switched or expanded, but the facts giving rise to the three theories of recovery have been expanded. Instead of the rustling of one cow on one date, the amended petition for the first time, over 6 years after the petition, brings up another occurrence 6 days distant from the first on which a large number of livestock were alleged to have been taken. Although this was a turbulent 3 months or so, Welch cannot be expected to be prepared for litigation of every conceivable fact situation out of this time period, even though unpleaded originally.

■ Therefore, under the relation back interpretations of the eastern or western districts, the portions struck under the contract theory were done so correctly. The stripping of the herds, their unhealthy condition, and the uneven split of the crop should have been excised. Although it could be said these events arose out of the same "conduct" or "transaction" under 55.-33(c), they do not allege a different interpretation of the facts, or allege the facts give rise to a different claim, but instead bring in new facts, new events and new occurrences, that were not noticed to the defendant by the original pleadings. These events could not relate back to avoid the statute.

■ As to the conversion aspects of the case, suffice it to say Troxell had her day in court on the one item initially pleaded. She was allowed to amend to conform to the evidence to ask for $15,000 for the damage of August 9. That one head was stolen on a date does not provide notice of larger thefts on other dates. The additional thefts alleged simply will not relate back under either theory.

■ The remaining matter is what will be allowed in on retrial of the trespass count. (Count II, paragraphs 1–4). Under either interpretation, paragraph 4, that Welch's herd harmed Troxell's herd, will not be allowed to relate back. Neither will paragraph 3, that seeks to reimburse Troxell for her time expended including conferring with law enforcement persons, be allowed to relate back. Paragraph 1 should not have been stricken, as it reiterates from the first petition the fact that the trespasses started on May 10. On retrial Troxell will be permitted to use this starting date.

The remaining part of this point, where Troxell also sought in the amended petition

to add a party, Patrick E. Welch, Inc., is, ruled against her.

## II.

■ Troxell's next point arises out of the judge's ruling a 10 minute limit on her redirect examination. The court noted the disarray of the organization and presentation of her case. Her direct testimony took approximately four hours. The court's action in limiting redirect was not an abuse of discretion. *State v. Griffin*, 497 S.W.2d 133, 136 (Mo.1973).

## III.

■ Troxell asked for a new trial because one of her subpoenaed witnesses, Martha Brunner, did not appear during trial. No request for a recess or continuance was made. She contends case law prior to the present Rule 78.01 on the granting of a new trial dictates a new trial on this point. Relying upon *Hamm v. Hamm*, 437 S.W.2d 449, 453 (Mo.App.1969), she claims "surprise" because her witness forgot to attend when subpoenaed. This point is denied.

## IV.

Troxell contends that the trial court should have granted a default judgment because Welch failed to file a responsive pleading in answer to her amended petition within the ten days prescribed by Rule 55.33(a). This is read in conjunction with Rule 74.045 which says a court shall grant a interlocutory judgment on default if the defendant fails to file a required pleading.

■ While this court does not encourage the trial court's circumvention of the rules, it does not believe the trial court abused its discretion in granting Welch an extension of time *sua sponte*. Under Rule 44.01(b) a court may in its discretion enlarge any time for cause shown if a request is made before the original period expires. Clearly had Welch requested an enlargement of time, there was ample cause. Fur-

thermore, judgments by default are not favored. *Lambert Bros. Inc. v. Tri City Const. Co.*, 514 S.W.2d 838, (Mo.App.1974). Under Rule 74.05 a judgment may be set aside for good cause shown, if done before damages are assessed. Thus had the trial court strictly followed Rule 74.045, Welch could have had such judgment set aside. Troxell certainly was not injured by the enlargement of only 30 days or so when she had failed for over 5 years to pursue her case. Under the circumstances, the trial court reached a fair result—there was no reversible error committed on this issue.

## *Conclusion*

It is hard to reconcile the adoption of the Rule, 55.33(c), with its clear language and numerous interpretations of the identical federal rule with a continuation of the "same evidence" rule set out previously by our supreme court. Comment, amendments to pleadings after the statute of limitations has run—A Change in Missouri, 40 Mo.L.Rev. 489 (1975). The rule is liberal in allowing an amendment after the statute has run to allow, new facts, new amounts of damages, and changes in theories of recovery. Why Missouri would have adopted such a rule and still cling to a more restrictive policy is hard to explain. In the abstract of philosophical and intellectual debate of which of the two should prevail, it is easy to light on one or the other. To this writer the federal and eastern district interpretation seems the most preferable. However, when these two interpretations of relation back are examined in the context of a factual situation like this one, (the highlight of this case came when according to the record, briefs and argument, Troxell shot one of Welch's cows and dumped it on the courthouse steps), the distinctions start to blur. One is left with the impression it would just be unfair to allow this plaintiff many years, many trial settings, and many utilizations of discovery later, to bring up new incidents that happened so close in time and that so directly involved her.

In any event the supreme court should move to make clear what the law is on relation lack. Rule 55.33(c) and the eastern district say one thing, the *Miller* an *Laux* cases and their progeny say another.

The judgment is reversed only as to that portion which relates to Count II, paragraph 2, and is remanded to allow Troxell to plead and try her action for any trespass occurring on or after May 10, 1976 through October 1976, but excluding any damages covered by the release. On retrial she shall be limited to $10,192.72 in actual damages as against Kenneth Welch. She shall also be allowed to amend her Count IV on punitive damages to be commensurate with the trespass claims to be tried, but in no event shall she be allowed to ask for more in punitive damages, $500,000, than she was allowed at the first trial. In all other respects the judgment of the trial court is affirmed.

All concur.