

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

CREST CONSTRUCTION II, INC.
AND METRO ENERGY, INC.,

        Appellants,

  v.

JOHN A. HART, ET ALIA,

        Respondents.

)
)
)
)
)
)
)
)
)
)
)

WD78135

OPINION FILED:

April 19, 2016

**Appeal from the Circuit Court of Clay County, Missouri**
**Honorable Janet Lodwick Sutton, Judge**

**Before Division Three:**
**James Edward Welsh, P.J., Thomas H. Newton, and Gary D. Witt, JJ.**

Crest Construction II, Inc. and Metro Energy, Inc. (collectively Crest Construction) appeal a judgment awarding them $4.1 million in actual and special damages against Mr. John Hart and Ms. Dee Hart and their business entities, On Time Auto Sales and Financing LLC, Fidelity Three, Inc., and Northland Auto Brokers, LLC (collectively On Time Auto), and dismissing with prejudice the first amended petition for breach of contract, fraud, conversion, and civil conspiracy as to Mr. Larry Myers, Ms. Connie Myers, Northland II, Inc., Northland Auto Sales & Leasing LLC,

Northland Auto Sales LLC, Mr. Buddy Taylor, and Ms. Hilda Marie Chaddock (Defendants). We affirm.[1]

The issues arise out of a state petition that was filed after the applicable statute of limitations had expired. The state petition was filed after a federal court had dismissed a complaint raising similar claims over which the court declined to exercise pendent jurisdiction. To the extent that Crest Construction pleaded the same claims both in federal and state court, we find, as elaborated more fully below, that a federal statute tolled some of the claims as to some of the parties. We also find that the tolled state claims fail because Crest Construction failed to show either that they fell within the partial performance exception to the statute of frauds or were sufficiently pleaded.

Viewed in the light most favorable to the first amended petition, the facts allege a business deal with its inception in late 2003 involving On Time Auto's sales and resales of used vehicles to third parties, financed by relatively high-interest loans that would be assigned "with recourse" to Crest Construction, which purchased the sales agreements and promissory notes by paying the sales price to On Time Auto, less the down payment. Crest Construction was then to receive, on a weekly basis, the loan payments made to On Time Auto and the Defendants by the car buyers on their contracts. Crest Construction was allegedly promised twenty-four-percent interest on its investment with one-hundred-percent recovery of investment principal. While Crest Construction refers throughout its pleadings to terms to which the parties "agreed" and to an "agreement," no writing executed by the parties setting forth these

---

[1] Judge Gabbert, who presided over this matter before he was appointed to the Missouri Court of Appeals for the Western District, has taken no part in the consideration of this case.

2

terms exists.  Between December 2003 and December 2004, Crest Construction allegedly paid some $1.6 million for 268 vehicle loan accounts.  Crest Construction received approximately $400,000 from payments on these accounts.  It alleges that On Time Auto and Defendants fraudulently used the same loan agreements assigned to Crest Construction and either sold them to or obtained loans from other financial entities, thus putting its collateral at risk, and failed to pay Crest Construction the loan payments that were made on the loans purchased by Crest Construction.  Crest Construction further alleges that Mr. Myers converted for his own use a "reserve account," established to guarantee Crest Construction payment for bad loan accounts.  Crest Construction also allegedly paid $200,000 for a twenty-five-percent equity interest in On Time Auto, which funds were supposed to be, but were not, used to pay off On Time Auto's entire business debt.

We dismissed an earlier appeal in this matter because the trial court had not issued a final judgment.  *Crest Constr. II, Inc. v. Hart*, 439 S.W.3d 246 (Mo. App. W.D. 2014).  The concise procedural summary therein sets the stage for the issues raised in this appeal.

> On October 4, 2007, Crest Construction filed a six-count complaint in the United States District Court for the Western District of Missouri.  The counts were Count I (Breach of Contract), Count II (Breach of Contract), Count III (Fraud), Count IV (Conversion), Count V (Civil Conspiracy), and Count VI (RICO).  All conduct allegedly committed by any defendants occurred from December 2003 through December 2004.
>
> On August 27, 2010, the district court dismissed Count VI (RICO), which had provided the basis for federal jurisdiction.  The district court declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) over the remaining claims, finding that the case was "a garden variety fraud and breach of contract case that should be heard in Missouri state court."  The court dismissed all of Crest Construction's

3

claims without prejudice. On November 4, 2010, the district court denied Crest Construction's motion to set aside the court's judgment and allow it to amend the complaint. On appeal to the Eighth Circuit Court of Appeals, Crest Construction submitted an amended complaint. The Eighth Circuit rejected the amended complaint and affirmed the district court's judgment on October 31, 2011.

On September 24, 2010, within thirty days of the federal district court's dismissal, Crest Construction filed its petition in the Circuit Court of Clay County. Crest Construction amended its petition on December 15, 2011. The amended petition brought the following claims: Count I (Breach of Contract), Count II (Breach of Contract), Count III (Fraud), Count IV (Conversion), and Count V (Civil Conspiracy). In its amended petition, Crest Construction alleged that it entered into a business relationship with [On Time Auto and] some of the Defendants to purchase vehicle sales contracts and promissory notes obtained by those companies from third-party customers. The claims stem from this relationship and the subsequent events that Crest Construction alleged transpired from December 2003 through 2004.

On October 26, 2011, the trial court entered a default judgment for Crest Construction against [On Time Auto]. In its judgment, the court cited Rule 74.05(b), the rule addressing the entry of interlocutory default judgment. The docket sheet also reflects that the default judgment was interlocutory.

On August 29, 2012, the circuit court held a hearing on the remaining Defendants' joint motion to dismiss. On September 28, 2012, the circuit court granted Defendants' motion. The circuit court found that Crest Construction's claims were barred by the statute of limitations, that the alleged contract could not be enforced because it violated the statute of frauds, and that Crest Construction's petition failed to properly plead a claim or cause of action as to each of the Defendants. On June 28, 2013, the circuit court entered its judgment dismissing Crest Construction's first amended complaint with prejudice as to "all defendants." The court, however, specifically stated in its judgment:

> Defendants John D. Hart and Dee Hart did not appear personally nor were they represented by counsel the Court having entered judgment previously in favor of Plaintiffs against Defendant John Hart and Dee Hart and their business entities on October 26, 2011, and this Judgment does not address that Interlocutory judgment.

*Id.* at 248-49.

4

We dismissed the appeal because no damages had been awarded, and thus the trial court had not resolved all of the issues as to all of the parties. *Id.* at 249. Thereafter, the trial court conducted a hearing on damages, during which Crest Construction's owner, principal shareholder, and primary officer Mr. Randall L. Robb testified, and issued a final judgment on October 9, 2014, awarding Crest Construction $4.1 million in damages against Mr. and Ms. Hart and their business entities. Finding that Crest Construction's amended petition was barred by the statute of limitations, the alleged agreement did not comply with the statute of frauds, and the petition failed to properly plead the elements of common law fraud and civil conspiracy,[2] the trial court again dismissed the petition as to Defendants with prejudice. Crest Construction filed this appeal.

The parties have cited the standard applicable to appellate review of a trial court's ruling on a motion to dismiss. And while the trial court here decided the matter on the basis of the Defendants' joint motion to dismiss, it did not confine itself to the pleadings in making its determination.[3] The Defendants attached exhibits to their joint suggestions in support of that motion, including the federal criminal docket in a mail fraud case against Mr. and Ms. Hart, Crest Construction's original federal complaint, the district court's ruling, and the Eighth Circuit's opinion. Crest Construction attached documents to its response, including an affidavit and a spreadsheet purportedly reflecting its losses and, as noted above, introduced evidence during a damages hearing. "Where, as here, both parties introduce evidence beyond

---

[2] Crest Construction has not challenged the court's civil conspiracy ruling in this appeal.

[3] Note also that the Defendants' joint motion to dismiss incorporates by reference Ms. Chaddock's motion for summary judgment, which challenged Crest Construction's failure to allege sufficient facts to support any claims as to her individually.

the pleadings, a motion to dismiss is converted to a motion for summary judgment, and the parties are charged with knowledge that the motion was so converted." *Thomas v. Grant Thornton LLP*, 478 S.W.3d 440, 444 (Mo. App. W.D. 2015). Accordingly, we review the trial court's judgment *de novo* and consider the record in the light most favorable to the party against whom judgment was entered, giving the non-mover the benefit of all reasonable inferences from the record. *Woodson v. City of Independence*, 124 S.W.3d 20, 26 (Mo. App. W.D. 2004). The circuit court enters summary judgment when "'the motion, the response, [and] the reply . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting Rule 74.04(c)(6)).

## Legal Analysis

In the first point, Crest Construction contends that the trial court erred by concluding that the federal litigation between the parties did not toll the statute of limitations under 28 U.S.C. § 1367(d) (2006). This point raises an issue of first impression in Missouri. Section 1367(d) tolls state statutes of limitations during the time that supplemental state-law based claims are pending in civil actions brought in federal district court and up to 30 days after the federal action is dismissed where the court decides not to exercise jurisdiction over the supplemental claims. The statute reads as follows:

> The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

6

*Id.* Here, the dismissed federal complaint included supplemental claims for breach of contract, fraud, conversion, and civil conspiracy over which the federal court declined to exercise supplemental jurisdiction. The applicable Missouri statute of limitations for these claims is five years. § 516.120. Because the relevant events arising out of the business relationship at the core of the federal complaint allegedly occurred no later than December 31, 2004, the state-law based claims would have been extinguished on December 31, 2009, while the claims were pending in federal court. If the claims in the federal complaint were the same as those Crest Construction asserted in its state-court petition, as amended, which it filed within thirty days of the federal district court's August 27, 2010, dismissal, the statute of limitations would have been tolled under section 1367(d).

A comparison of the federal complaint and the first amended state petition is required, because, for purposes of tolling, we must determine whether each claim filed in federal court is the same as each claim filed in state court. 28 U.S.C. § 1367(d).[4] This comparison would have been less onerous had Crest Construction simply changed the caption from the federal complaint and removed the RICO claim when filing its petition in state court. It did not do so. To aid our review, Crest Construction sets forth a brief comparison of the first amended federal complaint and the first amended state petition to demonstrate that all the claims are the same and

---

[4] We have found no Missouri court opinion addressing the application of 28 U.S.C. § 1367(d), but other courts, to which Crest Construction has drawn our attention, have determined that state-law claims are tolled "only when a party seeks to refile in the state court *the same* state-law claims the party asserted in federal court." *Rester v. McWane, Inc.*, 962 So. 2d 183, 186 (Ala. 2007) (emphasis added). During oral argument, Crest Construction cited *In re Vertrue Inc. Marketing & Sales Practices Litigation*, 719 F.3d 474 (6th Cir. 2013), to emphasize that courts look only to the titles for each cause of action when comparing the complaints under section 1367(d). We disagree that this case supports such a legal principle.

were thus tolled. Because the federal courts did not allow Crest Construction to file a first amended complaint, we turn instead to the original complaint to make that comparison.

Crest Construction also argues that it included additional facts in the petition filed in state court because Missouri is a fact-pleading jurisdiction, while federal courts require notice pleading. This is not quite accurate. Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), the U.S. Supreme Court adopted a plausibility pleading standard in the federal courts, requiring that a complaint state a claim for relief plausible on its face and set forth well-pleaded facts that permit the court to infer more than the mere possibility of misconduct. Under this standard, simply giving notice of a cause of action is no longer sufficient; more detailed factual allegations must be included to render the claim for relief plausible and thus actionable. Crest Construction also contends, without elaboration, that the changes in the first amended state petition reflect newly discovered evidence.[5]

The Defendants rely on case law pertaining to the amendment of pleadings and the relation back of amendments under Rule 55.33(c). In this regard, they cite *Troxell v. Welch*, 687 S.W.2d 902, 908 (Mo. App. W.D. 1985), in which the court determined that when a plaintiff brings "in new facts, new events and new occurrences, that were not noticed to the defendant by the original pleadings[, t]hese

---

[5] Because Crest Construction neither raised the issue of newly discovered evidence in its point on appeal nor briefed why newly discovered evidence may be asserted in a petition filed after the statute of limitations expires, we do not consider this argument further. *See Stickley v. Auto Credit, Inc.*, 53 S.W.3d 560, 563 (Mo. App. W.D. 2001) (noting that the argument section of an appellate brief must restate the points relied on and discuss the argument as to each point, court states, "The argument is limited to only those errors asserted in the points relied on").

8

events could not relate back to avoid the statute [of limitations]." According to *Troxell*, "One is left with the impression it would just be unfair to allow this plaintiff many years, many trial settings, and many utilizations of discovery later, to bring up new incidents that happened so close in time and that so directly involved [Appellant]." *Id.* at 909. Unfortunately, *Troxell* relied on *Laux v. Motor Carriers Council of St. Louis, Inc.*, 499 S.W.2d 805 (Mo. 1973), to support its Rule 55.33(c) interpretation. The Missouri Supreme Court noted in *Koerper & Co., Inc., v. Unitel International, Inc.*, 739 S.W.2d 705, 706 (Mo. banc 1987), that *Laux* had been abrogated with the adoption of Rule 55.33(c). In *Koerper & Co.*, the supreme court said that the rationale for the rule is "the concept that a party who is notified of litigation concerning a given transaction or occurrence has been given all the notice that statutes of limitation are intended to afford." *See also Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 116 (Mo. App. W.D. 2006) (noting that "rule is to be liberally applied, and is based on the concept of whether a defendant has been given notice sufficient to defend against claims relating to a particular transaction or occurrence"). Inasmuch as this case is not about the relation back of an amended pleading, we find the relation-back principle useful but not necessarily controlling to inform our comparison of the pleadings in federal and state court.

Res judicata principles may also guide our analysis, to the extent that the courts have attempted to discern whether a cause of action has previously been decided and may not be re-litigated. For purposes of res judicata, "to have identity of the cause of action, the actions do not have to be identical, but the claims must have arisen out of the 'same act, contract or transaction.'" *Jordan v. Kansas City*, 929

9

S.W.2d 882, 886 (Mo. App. W.D. 1996) (citing *Andes v. Paden, Welch, Martin & Albano, P.C.,* 897 S.W.2d 19, 23 (Mo. App. W.D. 1995)). Further elaborating this concept, the Southern District stated,

> "[T]he phrase 'cause of action' and the word 'transaction' both have broad meanings. The former does not refer to the form of action in which the claim is asserted, but to the cause for action, i.e., *the underlying facts combined with the law giving the party a right to a remedy of one form or another based thereon*. And the latter word ("transaction") has an even broader meaning. It has been defined as including the aggregate of all the circumstances which constitute the foundation for a claim, counterclaim, etc."

*Barkley v. Carter Cty. State Bank*, 791 S.W.2d 906, 912 (Mo. App. S.D. 1990) (quoting *Grue v. Hensley*, 210 S.W.2d 7, 10 (Mo.1948)) (emphasis added).

While the trial court acknowledged that both the federal complaint and first amended state petition included breach of contract, fraud, conversion, and civil conspiracy counts, it agreed with the Defendants that the new facts alleged in the state action "fundamentally change the causes of action alleged" in federal court. The court also observed, "This was not the first time that the plaintiffs have attempted to change the causes of action after the record has moved from one court to the next." The trial court indicated that the Eighth Circuit Court of Appeals had chastised Crest Construction for asserting facts on appeal not presented to the district court in an apparent effort to demonstrate an association among the defendants. While the factual allegations certainly factor into the cause of action because they underlie a party's right to a remedy, simply adding facts may, but does not necessarily, change the cause of action.

First, we note that the parties are not the same in both actions. The federal complaint includes more entities as defendants. Hart Family Motors, Inc., AAJD

10

Investments LLC, Kearney Land Acquisitions LLC, Northland Auto Brokers LLC, HOMES 4 LESS LLC, and Estate of Harvey Chaddock are named in the federal complaint, but are not named in the first amended state petition.[6] Still, as to the parties named as defendants in the first amended state petition, they were also named in the federal complaint, so if the claims are the same, section 1367(d) tolls the claims as to these defendants. We would also note that the claims in both federal and state court arise from the same alleged business relationship with On Time Auto and some of the Defendants, as well as alleged activity that occurred between December 2003 and December 2004 involving the purchase of vehicle sales contracts and promissory notes obtained by those Defendants from third-party customers.

Next, an examination of the first paragraph in each pleading common to all counts reveals significant differences between the two in terms of parties specifically named as participants.

Federal complaint:

> During the period December 2003 through January 2004 Randal L. Robb [sic] d/b/a Crest Construction II, Inc. entered into an ongoing oral agreement (hereinafter referred to as the "Operating Agreement") and a continuing business relationship with Defendants John Hart, Dee Hart and Larry Myers, and others doing business as On Time Auto a/k/a Hart Family Motors Inc., to purchase auto vehicle sales contracts and promissory notes (hereinafter referred to as "loan accounts") from Defendant On Time Auto, obtained by On Time Auto from third party customer(s). Randall L. Robb, principal of Plaintiff Crest, was contacted by Defendant Larry Myers on numerous occasions by telephone to schedule meetings at his office, at restaurants and the offices of Defendant John and Dee Hart where On Time Auto conducted its business. There were in excess of six meetings between Randall L. Robb and Defendants John Hart, Dee Hart and Larry Myers wherein the parties discussed the investment and purchase of loan accounts of On

---

[6] Mr. Hart is named John D. Hart in the federal complaint; he is named John A. Hart in the first amended state petition. This Court has already acknowledged that discrepancy and treated it as immaterial. *Crest Constr. II, Inc. v. Hart*, 439 S.W.3d 246, 248 n.1 (Mo. App. W.D. 2014).

11

Time Auto by Randall L. Robb or his designated legal entity, Plaintiff Crest.


First amended state petition:

During the period December 2003 through January 2004 Randall L. Robb d/b/a Crest Construction II, Inc. entered into an ongoing and continuing business relationship with Defendants John Hart, Dee Hart, Larry Myers, Connie Myers, Buddy Taylor and others doing business as On Time Auto, Northland Auto Brokers and Fidelity III d/b/a On Time Auto to purchase auto vehicle sales contracts and promissory notes (hereinafter referred to as "loan accounts") from Defendants On Time Auto, Northland Brokers and Fidelity III d/b/a On Time Auto obtained by On Time Auto, Northland Brokers and Fidelity III d/b/a On Time Auto Northland Brokers and Fidelity III d/b/a On Time Auto from third party customer(s). In approximately July or August 2003 Defendant Connie Myers, who had known Randall Robb of Plaintiff Crest for 20 years, called Randall Robb to inquire about a property he owned and introduced her husband Larry Myers to Randall Robb, which resulted in a real estate transaction for the benefit of Defendants Larry Myers and Connie Myers. During these meetings, Larry Myers asked Robb about investing in an alleged "lucrative" operation wherein Robb would make 24% interest on his money and recover his investment principal. The investment would be with On Time Auto, owned by John and Dee Hart. It was later learned that Larry and Connie Myers and Buddy Taylor became "silent partners" in On Time Auto. Sometime in late 2003, Defendant Connie Myers and Larry Myers introduced Randall Robb of Plaintiff Crest to John Hart and Dee Hart and approached Randall Robb (through Plaintiff Crest) to purchase retail vehicle loans which were held in the name of Northland Auto Brokers in 2003 and converted to On Time Auto in January 2004. These business introductions further cemented the relationship to On Time Auto as sponsors by Defendant Connie Myers and Larry Myers. Defendant Larry Myers who proposed the deal and on numerous later occasions Larry Myers, called Randall Robb by telephone to schedule meetings at his office, at restaurants and the offices of Defendant John and Dee Hart where On Time Auto conducted its business. There were in excess of six meetings between Randall L. Robb and Defendants John Hart, Dee Hart and Larry Myers wherein the parties discussed the investment and purchase of loan accounts of On Time Auto by Randall L. Robb or his designated legal entity, Plaintiff Crest. During these meetings, Defendants Larry Myers and John Hart represented to Randall Robb that On Time Auto was owned, controlled and managed by Defendants John Hart, Dee Hart, Larry Myers, Connie Myers and Buddy Taylor. During the later [sic] part of 2003, Defendant Connie Myers contacted Randall Robb to

12

determine if Robb or a Robb entity was going to purchase auto loans from Harts' auto entities and stated to Robb that she thought it was a good deal. These introductions, sponsorship, representation and meetings were used by the Defendants to induce Plaintiff Crest into purchasing auto-vehicle loan accounts and were part of a continuing conspiracy to defraud.

While Ms. Myers and Mr. Taylor were named defendants in the federal complaint, it is unclear whether Crest Construction would have had a remedy against them relating to any of the conduct alleged in this paragraph, because they were not specifically named as participants in the federal complaint. While they may come within the phrase "others doing business as On Time Auto a/k/a Hart Family Motors, Inc.," we do not learn until the state pleading was filed that Ms. Myers and Mr. Taylor were allegedly either silent partners in or owned, controlled, and managed On Time Auto. The federal complaint first mentions Mr. Taylor by name in paragraph 22, where Crest Construction raises allegations pertaining to the company's alleged agreement to purchase a twenty-five-percent equity interest in On Time Auto and how its investment was intended to be used. This is also the first time we learn that Mr. Taylor had an alleged ownership interest in On Time Auto and was one of "the original three owners (John and Dee Hart, Larry Myers and Buddy W. Taylor)."

In the final paragraph of the federal complaint's "common to all counts" section, Crest Construction alleges that Mr. Myers "unilaterally withdrew from the day to day operations of On Time Auto, and Defendant Larry Myers converted the entire 'Reserve Account' in the approximate amount of $40,000.00 to his own use." Not only does the first amended state petition contain two additional paragraphs in

13

the "common to all counts" section,[7] the paragraph regarding Mr. Myers's unilateral withdrawal includes allegations that the $40,000 was removed from an "Escrow Account" for the benefit of both Mr. *and* Ms. Myers and that $5,000 was removed from a "payable account" for their benefit. While the overall underlying transaction is common to both complaints, these added factual allegations alter any alleged liability in a fundamental way by pertaining to two defendants rather than just one, as well as the remedy available to the plaintiffs.

A comparison of the two pleadings under the first breach of contract count also shows discrepancies in those parties specifically named and asserts, in the case of the state pleading, an additional alleged breach. Also note that the final sentence in each pleading asserts a contradictory allegation.

Federal complaint:

> In June of 2004, Defendants breached its [sic] agreement with Plaintiff Crest under the "Operating Agreement" when Defendant Larry Myers withdrew from the oversight of On Time Auto, as agreed to by the parties. Defendant Larry Myers withdrew from the oversight of On Time Auto with the consent of Defendants John Hart and Dee Hart, and without the consent of Plaintiff Crest. The withdrawal of the oversight of On Time Auto by Defendant Larry Myers further breached the agreement by unilaterally converting the entire reserve account in the approximate amount of $40,000.00 to his own use. Said reserve account was established for the benefit of Plaintiff Crest and said conversation [sic] of the reserve account was without the consent of Plaintiff Crest. Defendant Larry Myers further advised Plaintiff Crest of his intention to forfeit Defendant Larry Myers's equity interest in on Time Auto.

First amended state petition:

---

[7] In one of those added paragraphs, the names Harvey Chaddock and Hilda Marie Chaddock appear for the first time as participants in the entire alleged fraudulent enterprise. As mentioned above, neither Harvey Chaddock nor his estate is a named defendant in the first amended state petition. Even if he were alive, he could not be found liable and no remedy could be afforded to Crest Construction due to his alleged participation in the enterprise, because he was not a party.

14

In June of 2004, Defendants breached its [sic] agreement with Plaintiff Crest" when Defendant Larry Myers withdrew from the oversight of On Time Auto, as agreed to by the parties. Defendant Larry Myers withdrew from the oversight of On Time Auto with the consent of Defendants, John Hart, Dee Hart, Larry Myers, Connie Myers and Bud Taylor but without the consent of Plaintiff Crest. The withdrawal of the oversight of On Time Auto by Defendant Larry Myers was a material breach of the agreement with Plaintiff Crest. In June of 2004, Defendant Larry Myers further breached the agreement by unilaterally converting the entire "Escrow" account in the approximate amount of $40,000.00 plus an additional $5,000 from "Accounts Payable" to his own use. Said reserve account was established for the benefit of Plaintiff Crest and said conversion of the reserve account was without the consent of Plaintiff Crest. Defendant Larry and Connie Myers never advised Plaintiff Crest of their intention to forfeit Defendant Larry Myers's equity interest in on Time Auto.

Again, it is unclear whether Crest Construction would have had a remedy for breach of contract against Ms. Myers and Mr. Taylor when the federal complaint was filed in that the allegations in that pleading pertain, for the most part, to Mr. and Ms. Hart, Larry Myers, and On Time Auto. In addition, because the $5,000 in accounts payable is absent from the federal complaint, the remedy available to Crest Construction has been altered because the factual basis has been altered.

A final example will indicate how Crest Construction further altered its allegations, including an apparent attempt to extend the statute of limitations. The federal complaint's fraud count relies on the common facts, including the pertinent timeframe of 2003 to 2004, while the first amended state petition alleges in paragraph 34 (pertaining to fraud), "During the period December 2003 through January 2008 and continuing to date, Plaintiffs have been the victims of an ongoing scheme concerning the purchase of vehicle sales contacts [sic] and promissory notes ('loan accounts') sold to third party customers by On Time Auto and a fraudulent scheme by

15

Defendants." This is followed by nearly twenty pages of single-spaced allegations concerning specific vehicles, sold, repossessed, resold, and sold again, some through 2008, and on which Crest Construction had purportedly been assigned the original loan account. None of these detailed allegations appears in the federal complaint, which claims losses in excess of $2.2 million, while the first amended state petition claims losses in excess of $3 million. By expanding the time during which Crest Construction had allegedly been victimized, the remedy available to Crest Construction has been drastically altered from the federal to the state pleading.

The legal theories may be the same, but the parties and facts and allegations have been so altered from the federal complaint's filing in 2007 to the state petition's filing in 2010 that it cannot be said with any confidence that the causes of action "'derive from a common nucleus of operative fact.'" *Jinks v. Richland Cty., S.C.*, 538 U.S. 456, 464 (2003) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).[8] In *United Mine Workers*, the U.S. Supreme Court discussed the concept of pendent jurisdiction, which allows federal courts to consider state-law based claims when they have jurisdiction over a related federal claim, and, in this regard stated, "[i]ts justification lies in considerations of judicial economy, convenience and fairness to litigants." 383 U.S. at 726. Nothing is fair about allowing a plaintiff to identify new parties and add new facts out of time to specific allegations underlying a particular count previously pleaded in federal court or to

---

[8] Upholding the constitutionality of section 1367(d), the U.S. Supreme Court observed that the law eliminated "a serious impediment to access to the federal courts on the part of plaintiffs pursuing federal- and state-law claims that 'derive from a common nucleus of operative fact.'" *Jinks v. Richland Cty., S.C.*, 538 U.S. 456, 464 (2003) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (discussing pendent jurisdiction, Court addresses what constitutes a cause of action, noting that, while the facts "do not constitute the cause of action, . . . they show its existence by making the wrong appear." *Id*. at 724.). The alleged wrongs of Ms. Myers and Mr. Taylor plainly would not have appeared on the basis of the facts alleged in the 2007 pleading.

extend the running of the statute of limitations by alleging in state court events and activity occurring even before the federal complaint, which lacks these allegations, is filed.

Still, if we view the first amended state complaint stripped of the added facts, we find some claims that could be tolled. The federal complaint and first amended state petition allege two counts of breach of contract against the defendants, specifically, Mr. and Ms. Hart, Mr. Myers, and On Time Auto. Crest Construction claims that they breached the agreement when Mr. Myers withdrew from the oversight of On Time Auto and allegedly converted the reserve account of $40,000 to his own use.[9] Crest Construction also claims that the "Defendants" (presumably Mr. and Ms. Hart, Mr. Myers, and On Time Auto, because they are the parties named in the "common to all claims" allegations of the federal complaint), breached the agreement by failing to pay and stopping all payments to Crest Construction for the amounts collected from third-party customers on the assigned auto loan accounts. The final breach of contract in the first count common to both pleadings concerns Mr. Hart's alleged sale of Crest Construction's loan accounts to a third-party group in Florida and the alleged failure of Mr. and Ms. Hart, Mr. Myers, and On Time Auto to pay Crest Construction amounts due "when said loan accounts were paid off by third party customers, vehicles were repossessed and resold by On Time Auto or when On Time Auto received damage payoffs from insurance companies."

The second breach-of-contract count claims that the Defendants (presumably Mr. and Ms. Hart, Mr. Myers, On Time Auto, and Mr. Taylor, because, as noted

---

[9] It is nevertheless unclear how the additional defendants breached the contract as a result of Mr. Myers's purported unilateral acts.

17

above, he was named in the federal complaint's allegations pertaining to Crest Construction's effort to buy an equity interest in On Time Auto) failed to pay plaintiff Metro Energy for the purchase of a one-third equity interest in On Time Auto and have refused to refund any and all payments for this interest. The date that this alleged breach occurred may or may not be material to the claim. In the federal complaint, Crest Construction alleges that the breach occurred in December 2004. In the first amended state petition, this breach allegedly occurred in June 2004. Thus, as to the breach-of-contract claims, some but not all of the allegations were tolled. As to the allegations set forth in these counts in the first amended state petition, but not in the federal complaint, we find that the trial court did not err in finding that section 1367(d) did not toll the statute of limitations. We affirm the trial court's disposition, however, as to the untolled breach-of-contract claims, because, as further discussed below in relation to the second point, Crest Construction has failed to show partial performance under the statute of frauds.

As indicated earlier, the fraud count was vastly expanded in the first amended state petition. At its core, however, it alleges a scheme and pattern of fraudulent activities specifically as to the actions of Mr. and Ms. Hart, Mr. and Ms. Myers, and others doing business as On Time Auto arising out of their alleged breach of the agreement with Crest Construction. Notably, in the federal complaint, this is the first mention of Ms. Myers. This count also alleges the use of U.S. mail and interstate telephones in furtherance of the fraud and claims that Mr. and Ms. Hart, Mr. Myers, "and others doing business as On Time Auto, made false and fraudulent misrepresentations in concert with other Defendants concerning the organizational

18

structure, guarantees, standard operational procedures, oversight by Defendants, and the conduct of the day to day operations of the business affairs of On Time Auto and other enterprises." Crest Construction alleges ignorance of the truth or falsity of the representations and that it relied on them. As to Mr. and Ms. Hart, Mr. Myers and On Time Auto, the claims are the same in both pleadings and, as such would have been tolled. As to the allegations set forth in the fraud count in the first amended state petition, but not in the federal complaint, we find that the trial court did not err in finding that section 1367(d) did not toll the statute of limitations. We affirm the trial court's disposition, however, as to the untolled fraud claims; as further discussed below in relation to the third point, Crest Construction did not plead fraud with sufficient particularity.

The conversion count common to both pleadings names Mr. and Ms. Hart and Mr. and Ms. Myers, doing business as On Time Auto, and other entities for allegedly converting money due to Crest Construction for the auto loan accounts it purchased.[10] To the extent that the state pleading adds Mr. Taylor and Ms. Chaddock to the claim, it was not tolled by section 1367(d). It is also questionable whether this count as to Ms. Myers was tolled because nothing in the preceding paragraphs sets forth facts that would support her participation in any alleged conversion. As to the allegations set forth in the conversion count in the first amended state petition, but not in the federal complaint, we find that the trial court did not err in finding that section 1367(d) did not toll the statute of limitations. We affirm the trial court's disposition, however, as to the untolled conversion claims; as further discussed below in relation

---

[10] Among the named entities in the conversion count of the first amended state petition are Northland Auto Brokers LLC, Homes 4 Less LLC, and Hart Family Motors, Inc. While these entities are named as defendants in the federal complaint, Crest Construction did not sue them in state court.

to the second point, because Crest Construction has failed to show partial performance under the statute of frauds, it cannot show an essential conversion element, i.e., that "the plaintiff had a right to possess the property at the time of the alleged conversion." *Capitol Indem. Corp. v. Citizens Nat'l Bank of Fort Scott, N.A.*, 8 S.W.3d 893, 899 (Mo. App. W.D. 2000); *see also Williams v. City of Kansas City*, 841 S.W.2d 193, 196 (Mo. App. W.D. 1992) (stating, "A conversion must constitute an invasion of plaintiff's legal rights"). And, finally, while certain of the civil conspiracy allegations in both pleadings are the same, because the trial court dismissed these claims due to Crest Construction's failure to plead them with sufficient particularity and Crest Construction has not challenged this ruling on appeal, we affirm the court's disposition of the tolled civil conspiracy claims.

In the second point, Crest Construction argues that the trial court erred by ruling that the contract did not come within the "partial performance" exception to the statute of frauds. Crest Construction has abandoned one of the bases for its argument before the trial court that a writing existed, i.e., that each assignment of a loan account represented a written agreement in compliance with the statute of frauds. This was the ground that the trial court considered and rejected. Crest Construction claims before this Court, as it did before the trial court, that the alleged contract came within a statute of frauds exception because the oral contracts were partially performed. While the trial court did not address this basis for Crest Construction's statute of frauds argument, because our review is *de novo,* we may affirm "on any ground supported by the summary judgment record, even if different

20

than the one posited by the trial court." *Dilley v. Valentine*, 401 S.W.3d 544, 551 (Mo. App. W.D. 2013).

At issue was an alleged agreement that could not be completed within one year; accordingly, the statute of frauds required that it be in writing. § 432.010. Partial performance is one of the permissible equitable exceptions to the statute of frauds, and its three elements must be established to avoid the statute's effect. *Piazza v. Combs*, 226 S.W.3d 211, 222 (Mo. App. W.D. 2007). Those elements require proof of (1) the proponent's actions, "which are cogent evidence of the existence of the pleaded contract"; (2) "clear, cogent, unequivocal, and convincing testimony" as to the verbal contract's terms; and (3) the proponent's actions, which were taken in reliance on the contract, and, as a result, "the positions of the parties were so changed that to permit the other party to rely on the statute of frauds would result in a grossly unjust and deep-seated wrong, constituting fraud or something akin thereto." *Id.*

While Crest Construction sets forth the elements recited above, it fails to argue in its brief in any detail how they were established. In this regard, Crest Construction states, in total, as follows:

> In all facets of their relationship, Mr. Robb relied on the representations the defendants made to him and the complete terms of the agreement were understood. Mr. Robb spent considerable time and resources obtaining the loan accounts. He expended funds in furtherance of the venture. He entered into these agreements with the defendants for the purpose of obtaining a specific return on his investment. Mr. Robb held up his end of the agreement to the fullest extent possible, and he reasonably expected the defendants to hold up their portion of the agreement.

We do not believe that these conclusory statements sufficiently explain to this Court how the first amended petition set forth sufficient facts for Crest Construction to

show that its partial performance took the verbal agreement outside the statute of frauds. Still, because "our general statute of frauds only bars contract actions and does not apply to actions sounding in tort," *Mika v. Central Bank of Kansas City,* 112 S.W.3d 82, 91 (Mo. App. W.D. 2003), we might have been constrained (if Crest Construction had raised the issue) to grant this point as to the non-contract-based causes of action asserted in the first amended petition. This point is denied.

As to the final point, i.e., that the trial court erred by finding the fraud claims stated with insufficient particularity, Crest Construction contends that the uncontested evidence introduced by Mr. Robb's testimony during the September 25, 2014, damages hearing, in addition to the pleading, provided sufficient detail as to the fraud allegations against Mr. Myers. Although section 509.500 allows issues tried by express or implied consent of the parties to be treated as if they had been raised in the pleadings, we agree with the Defendants that the damages hearing was specifically limited by the parties' consent to the submission of damages on the default judgment against Mr. and Ms. Hart. Because counsel for the Defendants did not consent to any testimony involving their clients before leaving the damages hearing, testimony on which Crest Construction intends to rely to bolster its pleadings as to any but the Harts and their business entities cannot be said to have been tried by consent. We do not consider Mr. Robb's testimony further on this issue.[11]

---

[11] In addition, as noted by counsel during oral argument, Mr. Myers had already been dismissed with prejudice from the case when the damages hearing took place. Crest Construction does not provide any authority for the proposition that dismissed claims can be amended by the express or implied consent of the parties.

22

Fraud has nine essential elements, and a failure to establish any one of them is fatal to recovery. *Trimble v. Pracna*, 167 S.W.3d 706, 712 (Mo. banc 2005). The nine essential elements are stated as follows:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Id*. at 717 n.5. The trial court determined here that Crest Construction failed to show, as to the Defendants, "a clear indication of the statements actually made by any defendant," "the existence of a false representation," or any representation by the Defendants "that would demonstrate a proximate cause of any harm suffered."

Reviewing the first amended petition in the light most favorable to Crest Construction, we agree with the trial court that the company failed to plead fraud with sufficient particularity. If we examine two alleged representations—that Mr. Myers apparently promised Crest Construction that it would make twenty-four percent on its investment and recover the investment principal in full and his promise that he would be personally involved in the day-to-day operations of the enterprise—we find that Crest Construction pleaded reliance on these guarantees.[12] We also find that Crest Construction alleged that Mr. Myers's purpose was to "defraud" Crest Construction. As to the remaining elements, the petition states that the representations,

---

[12] It is somewhat difficult to identify any additional particular representation attributable to any particular defendant. The first amended complaint lacks specificity as to who actually said what and when it was said.

were material, were false as more fully set out herein, were known to be false or were recklessly made without knowledge of the truth or falsity and were made with the intent that it [sic] should be acted on in a manner reasonably contemplated by Plaintiff Crest.

The petition further summarily states that Crest Construction was ignorant of the truth or falsity of the representations and had a right to rely on them and did rely on them. And finally, the petition states,

> As a direct and proximate result of the wrongful actions and representations of the Defendants as alleged herein, Plaintiffs have sustained, and will continue to sustain, damage in an amount to be proven at the time of trial.

Simply reciting the legal elements for fraud is insufficient to plead it. *See Hanrahan v. Nashua Corp.,* 752 S.W.2d 878, 882-83 (Mo. App. E.D. 1988); *see also Citizens Bank of Appleton City v. Schapeler*, 869 S.W.2d 120, 126 (Mo. App. W.D. 1993) (noting that "the fraud must clearly appear from the allegations of fact, and be independent of conclusions"). For example, what right would an apparently experienced businessman—Crest Construction owner and president Mr. Robb—have to rely on an unwritten "promise" that his investment in the loans used to purchase used autos would be returned in full in addition to making him a twenty-four percent return? The first amended petition does not answer that question. While Mr. Robb allegedly respected Mr. Myers and was reassured about the "safety" of his investment in reliance on Mr. Myers's alleged promise to be involved in the day-to-day operations of the enterprise, how this particular representation was false when made is not pleaded. In fact, from the beginning of the enterprise in late 2003 or early 2004, Mr. Myers was involved in the day-to-day operations and only allegedly withdrew on July 8, 2004. Crest Construction has not pleaded that Mr. Myers knew

24

he would withdraw when he made the representation at the enterprise's inception. Nor does the petition set forth the causal link between this alleged misrepresentation and the losses Crest Construction purportedly incurred. Rather, Crest Construction's inability to make the profits promised appears to be directly related to all of the Defendants' alleged acts of taking its money and returning little of it. How the company's losses were proximately caused by Mr. Myers's failure to remain directly involved in the day-to-day operations is something the court can only guess at, because it is not pleaded. This point is denied.

## Conclusion

Because Crest Construction has failed to show trial court error in dismissing its petition, we affirm.

/s/ THOMAS H. NEWTON
Thomas H. Newton, Judge


Welsh, P.J., and Witt, J. concur.