

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **DAVID BARRETT,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD86414** |
| | ) | |
| **V.** | ) | **OPINION FILED:** |
| | ) | **APRIL 2, 2024** |
| **COLE COUNTY, MISSOURI,** | ) | |
| **Respondent.** | ) | |

### Appeal from the Circuit Court of Cole County, Missouri
The Honorable Craig Everett Hellmann, Judge

Before Division One:  Alok Ahuja, Presiding Judge, Cynthia L. Martin, Judge and
Thomas N. Chapman, Judge

David Barrett ("Barrett") appeals from the trial court's judgment granting Cole County, Missouri's ("Cole County") motion to dismiss Barrett's amended petition which asserted employment discrimination and retaliation claims under the Missouri Human Rights Act[1] ("MHRA"), and which requested section 536.150 judicial review of Cole County's termination of Barrett's employment.  Barrett asserts that, contrary to the trial court's conclusion, his amended petition sufficiently stated cognizable claims for relief. We affirm the trial court's dismissal of Barrett's claims seeking section 536.150 judicial

---

[1]Section 213.010 *et seq.*  Unless otherwise noted all statutory references are to RSMo 2016 as supplemented through February 25, 2021.

review, reverse the trial court's dismissal of Barrett's MHRA claims, and remand this matter for further proceedings consistent with this opinion.

## Factual and Procedural Background

In reviewing the trial court's dismissal of a petition for failure to state a claim, we assume that all assertions set forth in the petition are true. *Loomis v. Bowers*, 645 S.W.3d 633, 635 n.3 (Mo. App. W.D. 2022). The facts herein discussed are thus drawn from our review of the allegations in Barrett's dismissed amended petition ("Amended Petition").

Barrett worked as a Deputy Sheriff for Cole County for approximately fifteen years. On January 19, 2021, Barrett was suspended with pay while the Cole County Sheriff's Department ("the Department") conducted an internal investigation regarding whether Barrett abused his authority and was incompetent. On February 17, 2021, the internal investigation expanded to include an allegation of offensive conduct and use of offensive language. The internal investigation resulted in a February 19, 2021 report prepared by Major A. B. The report concluded that the allegations of abuse of authority and use of offensive conduct and language were neither sustained nor founded, but that the allegation of incompetence was sustained. After the report was issued, Barrett was directed to meet with the Sheriff, J. W. ("Sheriff"). A meeting was scheduled for February 22, 2021.

Pursuant to a dispute resolution procedure set forth in the Cole County Personnel Policies Handbook, Barrett filed a grievance on February 20, 2021, raising issues with Major A. B.'s February 19, 2021 report. On the same day, Barrett also filed a personnel complaint with the Sheriff.

Barrett met with the Sheriff on February 22, 2021. Though Barrett was not terminated on that day, the Sheriff told Barrett during the meeting that the reasons for his looming termination had "built up for a couple of years." Barrett asked the Sheriff if his termination could be delayed until after his retirement eligibility, and the Sheriff said he would take that request under advisement.

The Sheriff terminated Barrett's employment on February 25, 2021, by letter that stated, "I have lost trust in your ability to perform your job." On that same day, the Sheriff informed Barrett by letter that he had "checked into" Barrett's grievances filed in response to Major A. B.'s February 19, 2021 internal investigation report and "did not substantiate any of them."

By letter dated March 2, 2021, Barrett filed an appeal with the Cole County Commission. In one paragraph of his Amended Petition, Barrett states that he was appealing his termination to the Cole County Commission. In other paragraphs of his Amended Petition, Barrett asserts that he was appealing the Sheriff's determination about his grievances to the Cole County Commission. The Cole County Commission advised Barrett by letter dated March 10, 2021, that it was refusing to hear his appeal. Barrett characterizes the Cole County Commission's decision as a refusal to hear an appeal from his termination in one paragraph of the Amended Petition, and as a refusal to hear an appeal from his grievances in another paragraph of the Amended Petition.

In addition to filing an appeal with the Cole County Commission, on a date not specified in the amended petition, Barrett requested a hearing pursuant to section 57.275. Section 57.275 permits a dismissed full-time deputy sheriff, within three working days of

3

receipt from the sheriff of the grounds for dismissal, to request a closed hearing before a hearing board appointed by the sheriff to determine facts which are then forwarded to the sheriff for consideration in his sole discretion. Barrett's section 57.275 closed hearing took place on March 15, 2021. The hearing board issued findings of fact on the same day. In the Amended Petition, Barrett represents that the hearing board found: (1) that Barrett's investigation of an assault was limited and incomplete, resulting in a false arrest; (2) that Barrett's conduct violated the Department's code of conduct related to abuse of authority; and (3) that the Sheriff has complete authority over the employment of deputies pursuant to section 57.201, and that deputies serve as at-will employees.

Barrett filed a charge of discrimination with the Missouri Commission on Human Rights ("the Commission") on August 10, 2021. The Commission issued Barrett a right-to-sue letter on March 17, 2022. Barrett filed a petition for damages in the Circuit Court of Cole County on June 3, 2022. On July 18, 2022, Cole County filed a motion to dismiss the petition for failure to state a claim or, in the alternative, for a more definite statement. The trial court granted the motion to dismiss, and gave Barrett twenty days to amend his petition.

Barrett filed the Amended Petition on February 2, 2023. The Amended Petition alleged that, in February 2013, one of Barrett's Black co-workers ("Co-Worker") was wrongfully demoted from sergeant to deputy because of his race. According to the Amended Petition, Co-Worker sought legal advice from Barrett, who is also an attorney. Barrett advised Co-Worker to obtain counsel and to pursue legal and equitable remedies against Cole County. Co-Worker filed suit against Cole County in July 2014. When the

4

Sheriff, who at that time was the Department's chief deputy, asked Barrett to discuss Co-Worker's suit, Barrett advised the Sheriff that he could not discuss the matter because he had advised Co-Worker to pursue the action. Co-Worker and Cole County settled the lawsuit in October 2018.

The Amended Petition further alleged that Barrett had privately obtained genetic testing and discovered that he had "substantial African American ancestry." Prior to the genetic testing, Barrett believed that he was Caucasian, consistent with his physical appearance. Approximately sixty days before his termination from the Department, Barrett told the Sheriff that he is Black. Barrett was suspended with pay and the internal investigation of Barrett began approximately thirty days later. Barrett alleged in his Amended Petition that, prior to disclosing that he is Black to the Sheriff, the conduct for which he was later punished had been accepted and tolerated, but that same conduct was used as a basis for discipline, punishment, and termination after his disclosure to the Sheriff.

The Amended Petition set forth six claims for relief: (1) race or color discrimination in violation of the MHRA ("Count I"); (2) perceived race or color discrimination in violation of the MHRA ("Count II"); (3) unlawful retaliation in violation of the MHRA ("Count III"); (4) associational discrimination and retaliation in violation of the MHRA ("Count IV"); (5) denial of due process in violation of the Missouri Constitution because either the Sheriff's or the Cole County Commission's rejection of his grievances was a final determination in a non-contested administrative proceeding entitling him to section 536.150 judicial review to clear his name ("Count

5

V"); and (6) judicial review pursuant to section 536.150 of the section 57.275 hearing board's factual findings because they were unconstitutional, unlawful, unreasonable, arbitrary or capricious, or involved an abuse of discretion ("Count VI").

Cole County filed a motion to dismiss the Amended Petition for failure to state a claim upon which relief can be granted or, in the alternative, for a more definite statement ("Motion to Dismiss"). The Motion to Dismiss asserted that Barrett failed to plead facts to support each count of the Amended Petition and instead pleaded "mere speculative conclusions."

With respect to the four claims of violations of the MHRA, the Motion to Dismiss claimed that the Amended Petition failed to plead facts alleging that Barrett's race or color, perceived race or color, or association with Co-Worker were motivating factors in the termination of Barrett's employment. The Motion to Dismiss then addressed the pleading deficiencies in each count, asserting that: (1) Count I failed to plead facts detailing the infractions for which the Department investigated Barrett, how Cole County changed its treatment of Barrett due to his race, how he was treated differently than similarly situated Caucasian employees, and whether he was qualified to remain a deputy for the Department; (2) Count II failed to plead facts detailing whether Cole County perceived Barrett to be Black, whether Barrett was qualified to remain a deputy for the Department, and how Barrett was treated differently than similarly situated Caucasian employees; (3) Count III and Count IV failed to plead facts establishing that Barrett made a complaint regarding discrimination against him or Co-Worker and that Barrett's termination resulted from any complaint Barrett made regarding discrimination; and (4)

6

Count IV further failed to plead facts detailing how Barrett was treated differently than similarly situated Caucasian employees and whether Barrett was qualified to remain a deputy for the Department.

The Motion to Dismiss also asserted that Count V and Count VI of the Amended Petition failed to state claims because Barrett is an at-will employee who is not entitled to section 536.150 judicial review of his termination, and because Barrett failed to plead sufficient facts to support a claim that he was denied due process.

Barrett argued in response to the Motion to Dismiss that the allegations contained in the Amended Petition alleged facts that, if true, established each of the elements of the asserted MHRA claims in Counts I through IV, and that Cole County's position that the Amended Petition needed to plead evidentiary facts is contrary to Missouri's fact-pleading requirements. With respect to Counts V and VI, Barrett argued that, despite being an at-will employee, Barrett has a due process right to protect his reputation entitling him to judicial review pursuant to section 536.150.

Following a hearing, the trial court issued its order and judgment granting Cole County's Motion to Dismiss ("Judgment') on June 15, 2023. The Judgment found that Barrett's Amended Petition "did not plead facts sufficient to support his claims for race discrimination and retaliation under the MHRA," and dismissed Counts I-IV. With respect to Counts V and VI, the Judgment found that the Amended Petition "failed to plead facts sufficient to support his allegations that the conclusions of [the section 57.275] hearing were unconstitutional, unlawful, unreasonable, arbitrary, capricious, involved an abuse of discretion, or were otherwise contrary to the law." Accordingly, the

7

Judgment held Barrett was not entitled to judicial review under section 536.150 and dismissed Counts V and VI. Based on these findings, the Judgment dismissed the Amended Petition without prejudice and ordered costs assessed against Barrett.

Barrett appeals.

## Jurisdiction to Consider Appeal

Jurisdiction is a threshold matter that we must consider before addressing the merits of Barrett's appeal. *Matthews v. Harley-Davidson*, No. SC100116, 2024 WL 340944, at \*2 (Mo. banc Jan. 30, 2024).

Section 512.020(5) provides that a party may take an appeal from any "[f]inal judgment in the case." As such, the judgment's finality is a prerequisite to appellate jurisdiction. *Matthews*, 2024 WL 340944, at \*2. "The general rule is that a dismissal without prejudice is not a final judgment and, therefore, is not appealable." *Laske v. Krueger*, 660 S.W.3d 22, 27 (Mo. App. W.D. 2023) (quoting *Walters Bender Strohbehn & Vaughan, P.C. v. Mason*, 316 S.W.3d 475, 477 (Mo. App. W.D. 2010)). If, however, a trial court dismisses a petition without prejudice for failure to state a claim and the plaintiff elects to "stand on [the] petition rather than plead[] additional facts," then the judgment of dismissal constitutes a final judgment for purposes of appeal. *Pride v. Boone Co. Sheriff's Dep't*, 667 S.W.3d 210, 211 (Mo. App. W.D. 2023). Barrett and Cole County agree that Barrett has elected to stand on his Amended Petition and not to plead further, thereby rendering the Judgment final. Accordingly, we have jurisdiction over Barrett's appeal from the Judgment, notwithstanding its dismissal of the Amended Petition without prejudice.

8

## Standard of Review

Rule 55.05 delineates what pleadings must include to set forth a claim for relief: "(1) a short and plain statement of the facts showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which the pleader claims to be entitled."[2] The party seeking relief need only plead ultimate facts, not evidentiary facts. *R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist.*, 568 S.W.3d 420, 425 (Mo. banc 2019). "Ultimate facts are those the jury must find to return a verdict for the plaintiff." *Id.* A motion to dismiss a petition for failure to state a claim is "solely a test of the petition's adequacy." *Pride*, 667 S.W.3d at 212 (quoting *Pennington v. Dobbs*, 235 S.W.3d 77, 79 (Mo. App. S.D. 2007)).

We review the trial court's grant of a motion to dismiss for failure to state a claim *de novo*. *Matthews*, 2024 WL 340944, at *2. "We review all grounds raised in the motion to dismiss, and we will affirm if the dismissal can be sustained on any of those grounds." *Sullivan v. University City*, 677 S.W.3d 844, 848 (Mo. App. E.D. 2023). In determining whether a petition states a claim upon which relief can be granted, we review the petition "to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in th[e] case." *Matthews*, 2024 WL 340944, at *2 (quoting *Bromwell v. Nixon*, 361 S.W.3d 393, 398 (Mo. banc 2012)). We "accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *Id.* (*Mo. State Conf. of NAACP v. State*,

---

[2]All Rule references are to Missouri Supreme Court Rules (2023), unless otherwise indicated.

9

601 S.W.3d 241, 246 (Mo. banc 2020)).  As such, we "liberally draw 'all *reasonable* inferences' from the allegations raised in [the] petition."  *Graves v. Mo. Dep't of Corr.*, 630 S.W.3d 769, 772 (Mo. banc 2021) (quoting *State ex rel. Henley v. Bickel*, 285 S.W.3d 327, 329 (Mo. banc 2009)).

**Analysis**

Barrett presents six points of appeal, each concerning one of the counts in the Amended Petition.  We discuss each point separately.

*Point One: Race or Color Discrimination*

Barrett's first point on appeal asserts that the trial court committed error in concluding that the Amended Petition did not plead facts to state a claim for race or color discrimination under the MHRA.  Section 213.055.1(1)(a) provides that it is an "unlawful employment practice" for an employer "[t]o fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color."  In 2017, the General Assembly amended Chapter 213 to provide that "because of" means "as it relates to the adverse decision or action, the protected criterion was the motivating factor."  Section 213.010(2).  "The motivating factor" was defined to mean "the employee's protected classification actually played a role in the adverse action or decision and had a determinative influence on the adverse decision or action."  Section 213.010(19).  Thus, to set forth a claim for race or color discrimination, the Amended Petition was required to plead the following ultimate facts:

10

(1) that Barrett suffered an adverse employment action; (2) that his race [or color] was the motivating factor; and (3) that he was damaged as a result.

With respect to Count I, the Amended Petition alleged the following:

67. [Barrett] incorporates paragraphs 1 through 59 into this count as if set out verbatim here.

68. [Cole County] violated [section] 213.055 of the MHRA, thereby discriminating against [Barrett] because of his race or color, including:

69. [Barrett] endured adverse employment actions, including termination;

70. At least one adverse employment action had a motivation, at least in part, because of [Barrett's] race or color, including:

> a. Prior to [Barrett's] disclosure of his bi-racial heritage, [Cole County] treated [Barrett] in the same or similar ways it treated White employees.

> b. After [Barrett's] disclosure, [Cole County] changed its treatment of [Barrett] and began to discriminate against him because he is a bi-racial man or because [Cole County] began to perceive [Barrett] as African American.

> c. After [Barrett's] disclosure, [Cole County] began to treat [Barrett] less favorably to similarly situated White employees, including [Barrett] being terminated for supposed infractions White employees could engage in with impunity.

71. [Cole County's] discrimination against [Barrett] caused [Barrett] damages, including lost wages, lost benefits, lost retirement, lost career opportunities, indignity, outrage, emotional distress, humiliation, and embarrassment, and garden variety mental [sic].

72. [Cole County] knew or should have known of the discrimination against [Barrett] because of race but failed to take prompt and effective action to remedy the discrimination.

Elsewhere in the Amended Petition, Barrett pleaded that he believed, consistent with his appearance, that he was Caucasian until he submitted to private genetic analysis and discovered he had "substantial African American ancestry"; that Barrett disclosed that he

11

was Black to the Sheriff before Christmas 2020, approximately sixty days before he was terminated as a deputy; that approximately thirty days after he disclosed his race to the Sheriff, Barrett was suspended with pay during an internal investigation regarding allegations of abuse of authority, incompetence, and offensive conduct/language; that Barrett's conduct before he disclosed his race to the Sheriff was tolerated and accepted, but after the disclosure, the same conduct was used as a basis for discipline, punishment, and termination; and that other Caucasian deputies engaged in the same or similar conduct as Barrett but were treated differently than Barrett in that the Caucasian deputies' incompetence "was and is an accepted occupational issue."

It is plain that the Amended Petition sufficiently pleaded an adverse employment action, particularly Barrett's termination from employment as a deputy for the Department. *See* section 213.055.1(1)(a) (identifying "discharge" as an unlawful employment practice). It is also apparent that the Amended Petition sufficiently pleaded that Barrett suffered damages as a result of his termination from employment, namely "lost wages, lost benefits, lost retirement, lost career opportunities, indignity, outrage, emotional distress, humiliation, and embarrassment, and garden variety mental" [sic]. The only question before us on appeal is whether the Amended Petition sufficiently pleaded that Barrett's race or color was "the motivating factor" in his termination from employment.

Missouri courts have long relied on federal employment discrimination case law, to the extent that it is consistent with Missouri law, when considering questions of law regarding the MHRA. *See Matthews*, 2024 WL 340944, *3. Federal case law informs

12

our analysis in the instant case because the MHRA's new "the motivating factor" standard is largely "analogous to the [a motivating factor standard] used in employment discrimination claims under federal law." *Ashby v. Woodridge of Mo., Inc.*, 673 S.W.3d 537, 546 n.6 (Mo. App. S.D. 2023) (quoting *Banks v. Kansas City Area Transp. Auth.*, 637 S.W.3d 431, 439 n.3 (Mo. App. W.D. 2021)).  Federal courts have long held that there need not be direct evidence of discrimination to prove that a protected characteristic was a motivating factor in the adverse employment action; instead, circumstantial evidence may be relied on to permit an inference that the protected characteristic was a motivating factor.  *See Desert Palace, Inc. v. Costa*, 539 S.W.3d 90, 97-98, 101-02 (2003).

We recognize that the standard of an employer's discriminatory intent under the MHRA claims is ***the*** motivating factor, and not ***a*** motivating factor--the statutory standard applicable in federal cases.  *See* 42 U.S.C. section 2000e-2(m).  We also recognize that  Missouri's requirement to plead ultimate facts in order to state a claim for which relief may be granted in Missouri does not directly parallel federal notice pleading requirements.[3]  However, it is nonetheless instructive that federal courts have held that pleading direct evidence of an employer's discriminatory intent is not necessary to

---

[3]*But see Crest v. Constr. II, Inc. v. Hart*, 487 S.W.3d 85, 90 (Mo. App. W.D. 2016), where this court observed that notice pleading in *federal* discrimination cases is no longer sufficient in light of the United States Supreme Court's adoption of a "plausibility pleading standard in the federal courts, requiring that a complaint state a claim for relief plausible on its face and set forth well-pleaded facts that permit the court to infer more than the mere possibility of misconduct." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

13

survive a motion to dismiss. Our Supreme Court has similarly recognized that proof of an employer's discriminatory intent often depends on "inferences [from circumstantial evidence] rather than on direct evidence" given that "employers are shrewd enough not to leave a trail of direct evidence." *Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 116 (Mo. banc 2015), *abrogated on separate grounds by statute*, section 213.010(2), (19), *as recognized by Eivins v. Mo. Dep't of Corr.*, 636 S.W.3d 155, 164-65 (Mo. App. W.D. 2021)). Accordingly, the question on a motion to dismiss for failure to state an MHRA race discrimination claim is whether a petition alleges ultimate facts giving rise to a reasonable inference that a protected characteristic was the motivating factor in the adverse employment action. Pleading direct evidence of discriminatory intent is not required to survive a motion to dismiss. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

The Amended Petition alleged a timeline of events and facts that, when considered together, support a reasonable inference that Barrett's race was the motivating factor in the termination of Barrett's employment. The timeline alleged by the Amended Petition is as follows: (1) Barrett disclosed his race to the Sheriff before Christmas 2020; (2) approximately thirty days later, Barrett was suspended with pay during an internal investigation regarding allegations that Barrett abused his authority, was incompetent, and used offensive conduct and language; and (3) approximately thirty days after the investigation began and approximately sixty days after Barrett disclosed his race to the Sheriff, Barrett was told that the internal investigation sustained the allegation that Barrett was incompetent. The Amended Petition also included allegations that Barrett's

14

conduct before he disclosed his race to the Sheriff was accepted; that Barrett's conduct after he disclosed his race to the Sheriff was used as a basis for discipline, punishment, and termination; and that Caucasian deputies engaged in similar conduct as Barrett but their behavior was accepted and tolerated. For purposes of a motion to dismiss, the alleged timeline and facts permit the inference that Barrett's race or color actually played a role in the termination of Barrett's employment and had a determinative influence on the decision to terminate Barrett's employment.

Cole County argues that the Amended Petition did not adequately plead "the specifics" of the conduct for which Barrett alleges his employment was terminated but for which other deputies were not because the Amended Petition did not allege that similarly situated Caucasian employees were not terminated after a finding of incompetent performance. [Respondent's Brief, p. 18] Cole County also faults the Amended Petition for failing to specify what actions or omissions by the Sheriff or Cole County were discriminatory. Cole County misunderstands the standard for adequately alleging facts giving rise to a cause of action. Cole County's position on appeal, while not stated explicitly as such in its brief, is that a pleading must include a description of *how* the plaintiff will prove the ultimate facts of the cause of action in order to overcome a motion to dismiss for failure to state a claim. That is not our standard when determining whether a petition states a claim for which relief can be granted. The particular conduct of Barrett and similarly situated deputies concerns the weight of evidence to *prove* employment discrimination on the basis of race or color. The particular actions or omissions by the Sheriff or Cole County also implicate the weight of evidence to *prove* employment

15

discrimination.[4]  At this stage of the proceedings, however, the only question before us is whether it would be reasonable to infer from the facts pleaded that Barrett's race or color were the motivating factor for the termination of Barrett's employment.  As we noted *supra*, the alleged timeline and facts gave rise to such an inference.

Point One is granted.

### Point Two: Perceived Race or Color Discrimination

---

[4]When evaluating proof of causation in an employment discrimination case that alleges disparate treatment, Missouri courts have used the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Eivins v. Mo. Dep't of Corr.*, 636 S.W.3d 155, 166 (Mo. App. W.D. 2021).  To prove a *prima facie* case of employment discrimination, the plaintiff must present evidence of the following: (1) "he is a member of a protected group;" (2) "he was qualified for the relevant position;" (3) "he suffered an adverse employment action;" and (4) "he suffered that adverse action under circumstances giving rise to an inference of discrimination." *Rimson v. Amazon Logistics, Inc.*, 652  F. Supp. 3d 1048, 1059 (W.D. Mo. 2023).  The other two steps of the *McDonnel Douglas* burden-shifting framework implicate the employer's burden of production to rebut the plaintiff's *prima facie* case with evidence of a legitimate, nondiscriminatory reason for the adverse employment action, and then the plaintiff's ultimate burden to prove that the employer's stated legitimate reason was mere pretext for intentional discrimination.  *Eivins*, 636 S.W.3d at 167. Federal courts have held that the *McDonnell Douglas* burden-shifting framework is to be used to evaluate whether the plaintiff has **proof** of a claim for employment discrimination on the basis of disparate treatment.  *See, e.g.*, *Vega*, 801 F.3d at 87 (recognizing that a plaintiff may prove discrimination using the *McDonnell Douglas* framework, but at the pleading stage, the proper test is whether the facts alleged "indirectly show discrimination by giving rise to a plausible inference of discrimination").

Our General Assembly appears to agree with such a position in that it has explicitly provided that, when reviewing a motion for summary judgment, courts "shall consider" the *McDonnell Douglas* "burden-shifting analysis" when an employment discrimination claim does not involve "direct evidence of discrimination."  *See* section 213.101.3.  The General Assembly did not make such a proclamation with respect to evaluating a motion to dismiss for failure to state a claim of employment discrimination on the basis of disparate treatment.  Accordingly, the arguments that Cole County made before the trial court as to the Amended Petition's failure to plead facts as to each of the four prongs of a *prima facie* case of employment discrimination are without merit.

Barrett's second point on appeal asserts that the trial court committed error in concluding that the Amended Petition did not plead facts to state a claim for perceived race or color discrimination under the MHRA. Barrett has not identified which provision of the MHRA on which he relies for his claim of perceived race or color discrimination. Based on the allegations in the Amended Petition, Barrett appears to be relying on section 213.055.1(1)(a), the same portion of the MHRA on which Count I is based.[5] Thus, a petition setting forth a claim of perceived race or color discrimination pursuant to section 213.055.1(1)(a) must plead the following ultimate facts: "(1) that [Barrett] suffered an adverse employment action; (2) that [his perceived] race [or color] was [the motivating] factor; and (3) and that [he] was damaged as a result." *Clark*, 623 S.W.3d at 203.

With respect to Count II, the Amended Petition pleaded as follows:

73. [Barrett] incorporates paragraphs 1 through 68 into this count as if set out verbatim here.

74. At the heart of the discriminatory animus in this case is [Cole County's] perception of [Barrett], via its employees and agents.

75. [Barrett] worked for the Sheriff's [D]epartment for about 15 years while [Cole County] evidently perceived him as White.

76. During that time, [Barrett] received treatment approximately the same as other employees who presented, or others perceived[,] as White.

---

[5]Cole County asserts in its brief that "Count II of [Barrett's Amended Petition] failed to state a cognizable claim under the MHRA[] because the MHRA has no specific statute which addresses 'perceived' race or color discrimination" but does not otherwise support this assertion with argument. [Respondent's Brief, p. 19] Cole County did not raise this argument in its Motion to Dismiss. Cole County's assertion that perceived race or color discrimination is not a cognizable claim under the MHRA is not properly before us for consideration, and we will not discuss the merits of this argument. *Breeden v. Hueser*, 273 S.W.3d 1, 6 (Mo. App. W.D. 2008) ("[We] will not . . . affirm the grant of a motion to dismiss on grounds not stated in the motion.").

77. [Barrett's] disclosure of his bi-racial heritage dramatically changed [Cole County's] perception of him, from seeing him as a White man to seeing him as bi-racial or, upon information and belief, Black.

78. As alleged in Count I and above, [Cole County] took adverse employment actions against [Barrett], including termination.

79. Upon information and belief, one or more of those actions was or were motivated in part by [Cole County's] perception of [Barrett ] as bi-racial or Black.

80. Moreover, [Barrett's] disclosure necessarily changed [Cole County's] perception of his color: for 15 years [Cole County] perceived [Barrett] as appearing White; when [Barrett] disclosed his bi-racial heritage, the perception necessarily changed, since [Barrett's] disclosure informed [Cole County] his color had been mis-perceived for those 15 years--in short, [Barrett] chose to stop "passing as" White and instead acknowledged the perception of him as White-colored was incomplete or erroneous.

81. Upon information and belief, [Barrett's] disclosure compounded [Cole County's] discriminatory animus with a sense of having been deceived-- such is [Cole County's ] discriminatory mindset racial identity might cause a change in esteem of [Barrett] by his supervisors.

82. [Cole County's] discrimination against [Barrett] because of perceived race or color caused [Barrett's] damages, including lost wages, lost benefits, lost career opportunities, indignity, outrage, and garden variety mental and emotional distress.

83. [Cole County] knew or should have known of the discrimination against [Barrett] because of his perceived race or color but failed to take prompt and effective action to remedy the discrimination.

Other allegations relevant to the perceived race or color discrimination count include the following: (1) Barrett's personal appearance is consistent with being Caucasian; (2) despite his personal appearance, Barrett is Black; (3) Barrett disclosed that he is Black to the Sheriff approximately sixty days before Barrett's employment as a deputy was terminated; (4) after Barrett disclosed his race to the Sheriff, Barrett was disciplined for

18

conduct that, prior to that disclosure, was accepted and tolerated; and (5) incompetence by white officers "was and is an accepted occupational issue."

As with Count I, there is no question that the Amended Petition pleaded an adverse employment action, particularly termination, and that Barrett was damaged as a result. As such, the only question that remains is whether the Amended Petition sufficiently pleaded that Barrett's perceived race or color was "the motivating factor" in his termination from employment. The same analysis we used in our discussion of Point One applies here. Whether the Amended Petition pleaded that Barrett's perceived race or color was the motivating factor in his termination from employment requires us to consider the reasonable inferences that could be drawn from the alleged facts.

As we noted in our discussion of Point One, *supra*, the timeline outlined by the Amended Petition in conjunction with the other facts alleged therein are key to determining whether it adequately pleaded that Barrett's perceived race or color was the motivating factor to the termination of his employment. The timeline and alleged facts give rise to the following inferences: (1) consistent with Barrett's appearance, the Sheriff believed that Barrett was white for approximately the first fifteen years of Barrett's employment by the Department; (2) the Sheriff no longer believed Barrett was white after Barrett disclosed to the Sheriff that he is Black in December 2020; (3) Barrett's newly disclosed race or color played a role in the Department initiating the internal investigation of Barrett for conduct that is tolerated and accepted by Caucasian deputies; and (4) the Sheriff's perception of Barrett's race or color played a role in the Department terminating Barrett for conduct that is tolerated and accepted by similarly situated white deputies and

19

had a determinative influence on the decision to terminate Barrett's employment. Accordingly, the alleged timeline and facts give rise to the inference that the Sheriff's perception of Barrett's race or color actually played a role in the termination of Barrett's employment and that the Sheriff's perception of Barrett's race or color had a determinative influence on the decision to terminate Barrett's employment.

Cole County argues that the timeline and factual allegations do not give rise to such an inference. Cole County asserts that Barrett needed to plead facts to support the following: "1) the Sheriff ever perceived [Barrett] to be any specific race or color, 2) that the Sheriff changed his perception of [Barrett's] race or color, and 3) that the Sheriff took any action indicating that the motivating factor in [Barrett's] termination was that [Barrett] claimed he was now a different race was than he previously believed." [Respondent's Brief, p. 20] As with Count I, Cole County's position on appeal is that Count II was not adequately pleaded because the Amended Petition did not include a description of *how* Barrett will prove the ultimate facts of employment discrimination on the basis of perceived race or color. At this stage of the proceedings, however, the only question before us is whether it would be reasonable to infer from the facts pleaded that Barrett's race or color, as perceived by the Sheriff, were the motivating factor for the termination of Barrett's employment. As we noted *supra*, the alleged timeline and facts gave rise to such an inference.

Point Two is granted.

### Point Three: Retaliation

20

Barrett's third point on appeal asserts that the trial court committed error in concluding that the Amended Petition failed to state a claim for unlawful retaliation under the MHRA. Section 213.070.1(2) provides that it is "an unlawful discriminatory practice for an employer . . . [t]o retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by [the MHRA] or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to [the MHRA]." To plead a claim of unlawful retaliation under the MHRA, a pleading must set forth the following ultimate facts: "(1) [the plaintiff] complained of or otherwise opposed discrimination; (2) the [employer] took adverse action against [the plaintiff]; and (3) a causal relationship exists between the complaint [or opposition of discrimination] and the adverse action." *Harrison v. Harris-Stowe State Univ.*, 626 S.W.3d 843, 857 (Mo. App. E.D. 2021).

With respect to Count III, the Amended Petition alleged the following:

84. [Barrett] incorporates paragraphs 1 through 79 into this count as if set out verbatim here.

85. The genesis of the entire course of discrimination against [Barrett] came from [Barrett's] complaints about [Cole County's] discrimination in violation of the MHRA against a Black coworker because of race.

86. During the course of the discrimination, [Barrett] stood up for his own rights as well, as he disclosed his bi-racial heritage and opposed the discrimination against him that followed.

87. [Cole County] took at least one adverse employment action, including termination, as retaliation against [Barrett] for standing up for his own and another's MHRA rights.

88. [Cole County's] unlawful retaliation against [Barrett] for standing up for his own and another's MHRA rights caused [Barrett] damages, including lost wages, lost benefits, lost career opportunities, indignity, outrage, and garden variety mental and emotional distress[.]

89. [Cole County] knew or should have known of the unlawful retaliation against [Barrett] but failed to take prompt and effective action to remedy the discrimination.

Relevant to the MHRA unlawful retaliation claim, the Amended Petition also pleaded the following: (1) Co-Worker was wrongfully demoted in February 2013 because of Co-Worker's race; (2) Co-Worker asked Barrett, an attorney, for legal advice related to Co-Worker's demotion; (3) Co-Worker filed suit against Cole County in July 2014; (4) the Sheriff, then the Department's chief deputy, directed Barrett to report to his office to discuss the circumstances of Co-Worker's claim against Cole County; (5) Barrett informed the Sheriff that he could not discuss the matter with the Sheriff because he advised Co-Worker to obtain counsel and seek relief from Cole County; (6) Co-Worker settled his lawsuit with Cole County in October 2018; (7) Barrett disclosed that he is Black to the Sheriff in December 2020; (8) after being found incompetent in an internal investigation, Barrett filed a grievance challenging the internal investigation's finding and filed a personnel complaint with the Sheriff; and (9) following the termination of his employment, Barrett requested a hearing under section 57.275 and appealed his termination to the Cole County Commission.

There is no question that the Amended Petition adequately pleaded the second element of a retaliation claim--that Cole County took an adverse employment action, namely termination, against Barrett. Cole County does not argue to the contrary, and

22

focuses instead in its Motion to Dismiss on the first and third essential elements of a claim of retaliation. Cole County argues that the Amended Petition failed to plead facts establishing that Barrett lodged a complaint regarding racial discrimination against him or against Co-Worker, and failed to plead facts establishing that there was a causal relationship between his complaint regarding racial discrimination and the termination of Barrett's employment.

With respect to the first element, Cole County's Motion to Dismiss and brief on appeal challenge only whether Barrett sufficiently pled that he lodged a "complaint." However, section 213.070.1(2) forbids an employer from retaliating or discriminating against a person who has *either* opposed a discriminatory practice forbidden by the MHRA *or* filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing concerning discrimination pursuant to the MHRA. *See Harrison*, 626 S.W.3d at 858 (holding that first element of an MHRA unlawful retaliation claim requires the plaintiff to plead that he "complained of or otherwise opposed discrimination" motivated by a classification protected by the MHRA).

Because the Amended Petition includes no allegation regarding Barrett's participation in a MHRA investigation, proceeding, or hearing prior to the termination of his employment, we analyze the Amended Petition to determine whether it pleaded ultimate facts to support a claim for unlawful retaliation on the basis of Barrett's opposition to race discrimination.

The Amended Petition, when given its broadest intendment, pleaded facts that could support two key inferences: (1) Barrett's legal advice to Co-Worker, who is Black,

23

was to obtain counsel and bring an employment discrimination claim regarding Co-Worker's demotion from sergeant to deputy against Cole County; and (2) Co-Worker took Barrett's legal advice and filed such an employment discrimination claim on the basis of race against Cole County. When Barrett told the Sheriff that he could not speak about the circumstances of Co-Worker's suit against Cole County because Barrett had advised Co-Worker to seek legal and equitable remedies, Barrett made the Sheriff aware of his opposition to Co-Worker's demotion from sergeant to deputy on the basis of race. The Amended Petition adequately pleaded that Barrett opposed discrimination on the basis of race prior to the termination of his employment.

The third element of an MHRA unlawful retaliation claim requires the plaintiff to plead that there is a causal relationship between his opposition to discrimination and his termination. *Harrison*, 626 S.W.3d at 857. As with Counts I and II, the applicable causal relationship is whether the opposition to discrimination was "the motivating factor" in the employer's adverse employment action. Section 213.010(2) & (19); *Eivins*, 636 S.W.3d at 180. Yet again, the Amended Petition's factual allegations, timeline, and reasonable inferences drawn therefrom, if given their broadest intendment, adequately plead that Barrett's opposition to race discrimination was the motivating factor in Cole County's decision to terminate Barrett's employment. When taken together, the Amended Petition allegations and inferences drawn therefrom pleaded the following: (1) sometime after Co-Worker's February 15, 2013 demotion from sergeant to deputy because of race, Co-Worker asked Barrett for advice, and Barrett advised Co-Worker to obtain counsel and seek legal and equitable remedies from Cole County; (2) sometime after Co-Worker filed

24

suit against Cole County on July 22, 2014, Barrett advised the Sheriff (who was not then the Sheriff, and instead was only the Chief Deputy) that he could not speak about the circumstances of Co-Worker's claim against Cole County because he had given Co-Worker advice on the matter; (3) Co-Worker and Cole County settled the lawsuit on October 23, 2018; (4) in December 2020, Barrett revealed that he is Black to the Sheriff; (5) approximately thirty days later, the Department began investigating Barrett; (6) on February 19, 2021, the investigation concluded and found that Barrett was incompetent; (7) the next day, Barrett appealed the investigation's finding of incompetence; and (8) in a February 22, 2021 meeting, the Sheriff told Barrett that the reasons for Barrett's termination of employment had "built up for a couple of years," a time period that included Barrett's advice to Co-Worker to seek counsel and file suit against Cole County. From those pleaded facts, an inference could be drawn that Barrett's opposition of discrimination on the basis of race against Co-Worker and opposition of discrimination on the basis of race against himself actually played a role in and had a determinative influence on the termination of his employment.

Cole County argues on appeal that the seven-to-eight-year gap between Barrett's reporting to the Sheriff that he could not discuss Co-Worker's claim and Barrett's termination is too remote and attenuated to permit a reasonable inference that Barrett's opposition of discrimination against Co-Worker played a role in the decision to terminate Barrett. Standing alone, we might agree. However, Cole County's argument disregards that Barrett's Amended Petition alleges that Cole County did not resolve Co-Worker's discrimination claim until October 2018, just a little more than two years before an

25

internal investigation was initiated involving Barrett, and before Barrett was thereafter terminated. And, Cole County's argument ignores the assertion in Barrett's Amended Petition that at the time he met with the Sheriff on February 22, 2021, the Sheriff told Barrett that the reasons for the looming termination of his employment had "built up for a couple of years," a time period that could be reasonably interpreted to include the resolution of Co-Worker's discrimination case. Barrett's assertion about the Sheriff's comment must be considered along with the allegation that Barrett's first report to Cole County about assisting Co-Worker was made to the Sheriff, but before he was serving in that role, and thus before the Sheriff was serving in a capacity with authority to terminate Barrett.

Moreover, the cases cited by Cole County to support its argument concern the sufficiency of the evidence presented at trial, and not whether a petition has pleaded the minimum ultimate facts required to survive a motion to dismiss. *See McGaughy v. Laclede Gas Co.*, 604 S.W.3d 730, 752 (Mo. App. E.D. 2020) (evaluating sufficiency of the evidence following trial); *Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 47-51 (Mo. App. W.D. 2016) (evaluating sufficiency of the evidence following trial). Though the amount of time that transpired between Barrett's first report that he was assisting Co-Worker and the date of his termination will be relevant to whether Barrett will prevail in persuading a fact-finder that there was a causal connection between his opposition to discrimination involving Co-Worker and his own termination, we cannot say as a matter of law that the Amended Petition fails to allege ultimate facts essential to state a claim for unlawful retaliation under the MHRA. The question here is not whether Barrett is likely

26

to prevail on his retaliation claim, but is instead whether he has alleged enough to nudge him over the line of stating a claim upon which relief could be granted. The Amended Petition satisfies this standard.

Point Three is granted.

### *Point Four: Associational Discrimination and Retaliation*

Barrett's fourth point on appeal asserts that the trial court committed error in concluding that the Amended Petition did not plead a cause of action for associational discrimination and retaliation. While both Barrett and Cole County characterize Count IV as seeking relief for associational discrimination and retaliation, both parties analyze whether the Amended Petition adequately stated a claim for associational discrimination without discussing whether the Amended Petition adequately stated a claim for associational retaliation. Our discussion of whether Count IV stated a claim for which relief could be given will, therefore, be limited to whether the Amended Petition adequately pleaded a claim for associational discrimination.

Section 213.070.1(4) provides that it is an unlawful discriminatory practice for an employer "[t]o discriminate in any manner against any other person because of such person's association with any person protected by this chapter." An associational discrimination requires that the pleading set forth allegations as to the following ultimate facts: "(1) [the plaintiff] associated with someone protected by the MHRA; (2) [the] adverse employment action occurred; and (3) that there is a causal connection between the two." *Sweeney v. City of Ladue*, 25 F.3d 702, 703 (8th Cir. 1994), *abrogated on separate grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011). The

27

causal connection between the association and the adverse employment action is "the motivating factor."

The Amended Petition pleaded as follows with respect to Count IV:

90. [Barrett] incorporates paragraphs 1 through 85 into this count as if set out verbatim here.

91. Upon information and belief, after [Barrett] complained about discriminatory treatment of a Black coworker, [Cole County] began to associate [Barrett] with the coworker.

92. When [Barrett] complained about the discriminatory treatment of his coworker, he stood up for his coworker's MHRA rights and participated in the investigation of the complaint by giving statements tending to support [Barrett's] Black coworker received discriminatory treatment because of race.

93. The MHRA prohibits discrimination or retaliation against an employee because the employee's association with a person subjected to discrimination, particularly when the employee takes part in standing up for the associated employee's MHRA rights. See [section] 213.070, RSMo.

94. [Cole County's] association of [Barrett] with his Black coworker, arising from [Barrett's] complaint of discrimination against the coworker and his disclosure that he himself is biracial (which, to the discriminatory mind, necessarily creates an association of "not White"), was a motivating factor in [Cole County's] discrimination against him and retaliation against him.

95. This is not a derivative claim but rather [Barrett's] assertion of his own rights and protections under [section] 213.070 were violated by the discrimination and retaliation carried out against him because of his association with a Black coworker.

96. [Cole County] took at least one or more adverse employment actions, including termination, against [Barrett] because of his association with his Black coworker or because he helped his coworker stand up for his MHRA rights.

97. [Cole County's] unlawful discrimination and retaliation against [Barrett] for his association with his Black coworker or his participation in standing up for his coworker's MHRA rights, caused [Barrett] damages,

28

including lost wages, lost benefits, lost career opportunities, indignity, outrage, and garden variety mental and emotional distress[.]

98. [Cole County] knew or should have known of the unlawful associational discrimination and retaliation against [Barrett] but failed to take prompt and effective action to remedy either.

Elsewhere in the Amended Petition, Barrett alleged the timeline of relevant events as follows: (1) Co-Worker was demoted from sergeant to deputy on February 15, 2013; (2) sometime thereafter, Co-Worker asked Barrett for legal advice; (3) Co-Worker filed suit against Cole County on July 22, 2014; (4) sometime thereafter, Barrett informed the Sheriff (who was not then the Sheriff, and instead was only the Chief Deputy) that he could not speak about Co-Worker's lawsuit against Cole County because Barrett had advised Co-Worker to obtain counsel and seek legal and equitable remedies; (5) Co-Worker and Cole County reached a settlement on October 23, 2018; and (6) on February 22, 2021, the Sheriff informed Barrett that the reasons for Barrett's termination of employment had "built up for a couple of years."

There is no question that the Amended Petition adequately pleaded that Barrett associated with Co-Worker, who is Black, and that Cole County took an adverse employment action, namely termination, against Barrett. The only basis on which the Motion to Dismiss challenged Count IV's claim for associational discrimination was whether the Amended Petition adequately pleaded that Barrett's association with Co-Worker was the motivating factor for Barrett's termination. But, as with Counts I, II, and III, the facts and timeline alleged in the Amended Petition permit an inference that Barrett's association with Co-Worker, namely supporting Co-Worker after he was

29

demoted from sergeant to deputy by advising Co-Worker to obtain counsel and file suit against Cole County, actually played a role in and had an influence on the termination of his employment. While the delayed temporal connection between the date of Barrett's support of Co-Worker and Barrett's termination may weigh against a fact-finder's acceptance of the proposition that support of the Co-Worker was a motivating factor in Barrett's termination, for purposes of a motion to dismiss, we cannot say that the Amended Petition failed to adequately plead this essential element.

Point Four is granted.

***Points Five and Six: Judicial Review Pursuant to Section 536.150***

Barrett's fifth and sixth points on appeal concern Counts V and VI, both of which seek judicial review of a non-contested case pursuant to section 536.150.

Count V addresses the grievances Barrett filed after receiving the February 19, 2021 report prepared by Major A. B. following an internal investigation of Barrett. Barrett alleged in Count V that either the Sheriff's rejection of his grievances or the Cole County Commission's refusal to hear an appeal of the rejected grievances "was the final determination in a non-contested administrative proceeding." Barrett further alleged in Count V that although he was an at-will employee, he nonetheless had the "right under Article I[, section] 10 of the Missouri Constitution to Due Process of Law" in the form of "a name clearing hearing if his separation from [Cole County's] employment is purported to be under unfavorable circumstances." In Count V, Barrett sought judicial review "of the decision terminating his employment pursuant to [section] 536.150," and a determination after an appropriate hearing the he "engaged in no misconduct in his

30

employment, [and] ordering the records of his employment to be amended to so reflect." Barrett did not seek reinstatement to his position.

Count VI sought section 536.150 judicial review of the factual findings reached by the section 57.275 hearing board, a proceeding characterized by Barrett as a "name-clearing hearing."[6] Barrett alleged that although he was an employee at-will, he was entitled to, and did in fact receive, a hearing "in accordance with the provisions of [section] 57.275." Barrett alleged, however, that the hearing board's factual findings were "unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involve an abuse of discretion or otherwise are contrary to law." As with Count V, in Count VI, Barrett sought judicial review "of the decision terminating his employment pursuant to [section] 536.150," and a determination after an appropriate hearing the he "engaged in no misconduct in his employment, [and] ordering the records of his employment to be amended to so reflect." Barrett did not seek reinstatement to his position.

The Motion to Dismiss asserted that Count V and Count VI of the Amended Petition failed to state claims because Barrett is an at-will employee who is not entitled to section 536.150 judicial review of his termination, and because Barrett failed to plead sufficient facts to support a claim that he was denied due process. The trial court dismissed both Counts V and VI. The trial court concluded as to both Counts that the Amended Petition admitted that Barrett already had received a "name-clearing hearing" pursuant to section 57.275, and that Barrett "failed to plead facts sufficient to support his

---

[6]We express no opinion about whether section 57.275 can be appropriately referred to as a name-clearing process.

allegations that the conclusions of [the section 57.275] hearing were unconstitutional, unlawful, unreasonable, arbitrary, capricious, involved an abuse of discretion, or were otherwise contrary to law."

We agree with the trial court that Barrett failed to plead any facts to support the bare legal assertion in the Amended Petition that his section 57.275 hearing was "unconstitutional, unlawful, unreasonable, arbitrary, capricious, involved an abuse of discretion, or [was] otherwise contrary to law."  However, this basis for dismissal was not raised in the Motion to Dismiss.  "In determining the appropriateness of the trial court's dismissal of a petition, an appellate court reviews the grounds raised in the defendant's motion to dismiss."  *Lang v. Goldsworthy*, 470 S.W.3d 748, 750 (Mo. banc 2015).  Though the trial court erroneously relied on a stated basis for dismissal that was not raised in the Motion to Dismiss, because our review is *de novo*, we can affirm the trial court's dismissal of Counts V and VI of the Amended Petition if the ruling can be sustained on any ground alleged in the Motion to Dismiss.  *Farm Bureau Town & Country Ins. Co. of Mo. v. Angoff*, 909 S.W.2d 348, 351 (Mo. banc 1995).  Applying this standard of review, the trial court's dismissal of Counts V and VI of the Amended Petition for failure to state a claim was not in error.

The Missouri Administrative Procedures Act[7] provides for two types of administrative cases: contested and non-contested.  *Furlong Cos. v. City of Kansas City*, 189 S.W.3d 157, 165 (Mo. banc 2006).

---

[7]*See* Chapter 536.

> Contested cases provide the parties with an opportunity for a formal hearing with the presentation of evidence, including sworn testimony of witnesses and cross-examination of witnesses, and require written findings of fact and conclusions of law. . . . Non-contested cases do not require formal proceedings or hearings before the administrative body.

*Lampley v. Mo. Comm'n on Hum. Rts.*, 570 S.W.3d 16, 20 (Mo. banc 2019) (quoting

*Furlong Cos.*, 189 S.W.3d at 165). Whether an administrative proceeding was contested

or non-contested is a question of law that is resolved by examining whether the law

requires a formal hearing with the presentation of evidence. *Tinnin v. MODOT & Patrol*

*Emp.'s Ret. Sys.*, 647 S.W.3d 26, 33 (Mo. App. W.D. 2022). The parties agree that both

the disposition of Barrett's grievances following issuance of the February 19, 2021 Major

A. B. report and the section 57.275 board hearing following the Sheriff's termination of

Barrett's employment were not formal hearings or proceedings involving the presentation

of evidence and sworn testimony of witnesses. We agree. At best, therefore, the

processes about which Barrett complains were non-contested administrative proceedings.

At issue in this case is whether the trial court correctly concluded, based on the

grounds alleged in the Motion to Dismiss, that Barrett failed to allege facts in Counts V

and VI of the Amended Petition sufficient to establish a right to section 536.150 judicial

review of either the disposition of his grievances or of the section 57.275 hearing.

Section 536.150.1 governs judicial review of non-contested cases:

> When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person, including the denial or revocation of a license, and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action,

and in any such review proceeding the court may determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion; and the court shall render judgment accordingly, and may order the administrative officer or body to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.

To adequately plead a claim for judicial review under section 536.150.1, the petition must include the following allegations: (1) an agency decision; (2) that denied a legal right, duty, or privilege; and (3) the denial was "unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involve[d] an abuse of discretion." *Spurgeon v. Mo. Consol. Health Care Plan*, 481 S.W.3d 604, 606 (Mo. App. W.D. 2016) (quoting *McIntosh v. LaBundy*, 161 S.W.3d 413, 416 (Mo. App. W.D. 2005)).

The Motion to Dismiss does not address the first or third prongs, and instead only questions whether Barrett pled facts in Counts V and VI of the Amended Petition sufficient to establish the second prong. Specifically, the Motion to Dismiss alleges that Barrett's status as an at-will employee disqualifies him from section 536.150 review, and that Barrett did not otherwise allege facts sufficient to establish a denial of due process. We agree.

Barrett concedes in both Count V and Count VI of the Amended Petition that he was an at-will employee. "[J]udicial review is not available to a terminated employee-at-

34

will unless the employee is protected by statute, ordinance, regulation or employment contract." *Cole v. Conservation Comm'n*, 884 S.W.2d 18, 20 (Mo. App. W.D. 1994) (citing *Barnes v. City of Lawson*, 820 S.W.2d 598, 601 (Mo. App. W.D. 1991)).  If there is no statute, ordinance, regulation, or employment contract, "the determination of *the adequacy of the grounds* for [the government employee's] dismissal is not subject to judicial review."  *Mosley v. Members of Civ. Serv. Bd. of City of Berkeley*, 23 S.W.3d 855, 859-60 (Mo. App. E.D. 2000).   Barrett has not alleged that his right to serve in the position of deputy sheriff was protected by statute, ordinance, regulation or employment contract.  As such, Barrett has not alleged facts that, if true, would demonstrate he possessed a property right or entitlement to his position that supports a right to section 536.150 judicial review of the adequacy of the grounds for his dismissal.  Barrett effectively concedes as much.  Though Barrett seeks section 536.150 judicial review "of the decision terminating his employment" in Count V and VI of the Amended Petition, Barrett does not seek reinstatement to his position.

Instead, Barrett seeks section 536.150 judicial review of the findings in the Major A. B. report and the findings made by the section 57.275 hearing board for the limited purpose of correcting his employment records.  Barrett argues that he has a due process right to section 536.150 judicial review because of reputational damage that will result from the findings in the February 19, 2021 Major A. B. report (the subject of Count V), or from the factual findings of the section 57.275 hearing board (the subject of Count VI).  A liberty interest, and thus the safeguards of procedural due process, arise "where a person's good name, reputation, honor or integrity is at stake because of governmental

35

action." *Barnes*, 820 S.W.2d at 601 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)). A person asserting the deprivation of due process protections must demonstrate that "governmental conduct likely will: (1) seriously damage his standing and associations in his community; (2) impose a stigma upon the employee that will foreclose his future opportunities to practice his chosen profession; or (3) constitute an admittedly direct impingement upon the employee's free speech interest." *Williams v. Jones*, 562 S.W.2d 391, 396 (Mo. App. St. L. Dist. 1978) (citing *Bd. of Regents*, 408 U.S. at 573-75); *see also Barnes*, 820 S.W.2d at 601 ("[W]hen a governmental employee is terminated for unsatisfactory performance and insubordination, an infringement of liberty does not attach" unless "the reasons for discharge . . . seriously harm their standing within the community or foreclose their future opportunities for re-employment.").

"In order to require a due process hearing, the charges must involve imputation of illegal, dishonest or immoral conduct which call into question the employee's good name, honor or integrity." *Williams*, 562 S.W.2d at 397. "Further, there must be a public disclosure of the reasons for dismissal before there can be damage to the community reputation of the discharged employee." *Id.* (citing *Bishop v. Wood*, 426 U.S. 341, 348 (1975), *overruled on other grounds by Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 540-41 (1985)); *see also Johnston v. Borders*, 724 Fed. App'x 762, 766 (11th Cir. 2018) (a liberty interest sufficient to require a due process hearing requires "'(1) a false statement, (2) of a stigmatizing nature, (3) attending [a public employee's] discharge (4) made public, (5) by [her] government employer (6) without a meaningful opportunity for employee name clearing'") (citation omitted); *McDonald v. Wise,* 769 F.3d 1202, 1212

(10th Cir. 2014) (statement must impugn the good name, reputation, honor or integrity of employee; be false; occur during termination and foreclose other employment; and be published, meaning publicly disclosed); *Eddings v. City of Hot Springs*, 323 F.3d 596, 601 (8th Cir. 2003) (to establish right to a due process hearing employee must show "defamation by a state actor during the course of termination," and the "public officials . . . made untrue and stigmatizing statements about him to the public").

Barrett's Amended Petition establishes that he was discharged only because of improper job performance. The Amended Petition alleged that an internal investigation concluded that Barrett was "incompetent," and further alleged that the Sheriff informed Barrett that the reason for the termination of his employment had "built up for a couple of years," and that the Sheriff had "lost trust in [Barrett's] ability to perform [his] job." The section 57.275 hearing board found that Barrett conducted an incomplete investigation that resulted in a false arrest, and that Barrett violated an abuse of authority provision in the Department's Law Enforcement Code of Conduct. We need not address whether any of these "findings" or stated bases for termination imputed illegal, dishonest, or immoral conduct to Barrett calling into question his good name, honor, or integrity. Even if the Amended Petition is generously read to allege ultimate facts suggesting that the reasons given for Barrett's termination rise to the level of seriously harming Barrett's standing within the community or foreclosing his future opportunities for re-employment, Barrett alleges no facts suggesting there has been public disclosure of either the Major A. B.

37

report or the section 57.275 hearing board's factual findings.[8]  Barrett's counsel admitted as much during oral argument.

Because Barrett was admittedly an at-will employee with no property right supporting section 536.150 judicial review, and because the Amended Petition contains no factual allegations sufficient to establish that Barrett's liberty interests were impaired such that principles of due process require section 536.150 judicial review, the Motion to Dismiss Counts V and VI of the Amended Petition was properly granted, though on grounds other than those stated in the Judgment.

---

[8]Because Barrett's Amended Petition is facially insufficient to implicate a liberty interest supporting section 536.150 judicial review, we need not address whether the plain language of section 57.275 would independently require us to conclude that a hearing authorized by that statute will not support a claim of right to section 536.150 judicial review as a matter of law.  While section 57.275.1 gives a terminated deputy the right to a hearing regarding the grounds provided by a sheriff for termination, and provides that a hearing board will make factual findings, section 57.275.1 also provides that the sheriff retains final decision-making authority over the termination decision regardless the hearing board's findings.  Importantly, section 57.275.2 provides that the statute "shall not be interpreted as creating any new substantive due process rights."

In *McCoy v. Caldwell County*, 145 S.W.3d 427, .427-28 (Mo. banc 2004), our Supreme Court considered whether two deputies who were terminated from employment by the county sheriff could seek judicial review of their dismissals as "contested cases" pursuant to section 536.100.  Our Supreme Court rejected the deputies' position that a section 57.275 hearing constitutes a contested case, explaining, "to trigger jurisdiction for contested case review . . . the hearing mandated by law . . . must be one 'in which legal rights, duties, or privileges of specific parties . . . are to be determined.'"  *Id.* (quoting section 536.010(2), RSMo 2000).  The Court found that a section 57.275 hearing does not determine legal rights, duties, or privileges.  *Id.* at 428.  Though *McCoy* addressed whether a section 57.275 hearing supported contested case judicial review pursuant to section 536.100, the Supreme Court's finding that a section 57.275 hearing does not implicate "legal rights, duties, or privileges" is of universal application to both section 536.100 and section 536.150.  It is axiomatic that unless an administrative agency has rendered a decision "determining the legal rights, duties or privileges of any person," there is no right to section 536.150 review.  *See* section 536.150.1.

38

Points Five and Six are denied.

## Conclusion

The Judgment's dismissal of Counts V and VI of the Amended Petition is affirmed. The Judgment's dismissal of Counts I, II, III, and IV of the Amended Petition is reversed. This matter is remanded for proceedings consistent with this opinion.

_Cynthia L. Martin_____
Cynthia L. Martin, Judge

All concur

39